# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 3, 2011 Session

## STATE OF TENNESSEE v.
## NELSON AGUILAR GOMEZ and FLORINDA LOPEZ

### Appeal by Permission from the Court of Criminal Appeals
### Criminal Court for Davidson County
### No. 2007-D-3177      Cheryl A. Blackburn, Judge

---

### No. M2008-02737-SC-R11-CD - Filed April 24, 2012

---

A mother and father were jointly tried on two counts of felony murder and three counts of aggravated child abuse as a result of the death of their child. Only the mother testified in her own defense. During direct examination, the mother did not testify about prior incidents in which the father assaulted her. On cross-examination, father's counsel asked the mother whether she believed the father was capable of "hurting" the victim. The trial court ruled sua sponte that counsel for the father had "opened the door" to cross-examination about the father's assaults against the mother. The father was convicted of two counts of felony murder and three counts of aggravated child abuse, and the trial court merged the felony murder counts. The mother was convicted of two counts of facilitation of felony murder and two counts of aggravated child abuse, and the trial court merged the facilitation of felony murder counts. The Court of Criminal Appeals dismissed one aggravated child abuse count against the father but affirmed the ruling of the trial court in all other respects. Only the mother appealed. We hold that the evidence of prior assaults by the father was inadmissible and that the parties did not open the door to cross-examination about the father's assaults against the mother. We reverse the mother's conviction and remand the case for a new trial.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Reversed;
### Case Remanded to the Criminal Court for Davidson County

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Jeffrey Allen Devasher, Nashville, Tennessee (on appeal); J. Michael Engle and Mary Kathryn Harcombe (at trial), for the appellant, Florinda Lopez.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; Clark Bryan Thornton, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts and Procedural History

On March 3, 2007, Nelson Aguilar Gomez and Florinda Lopez took their three-month-old daughter, Azucena Lopez-Lajuj ("the victim"), to the hospital emergency room. When the victim arrived at the hospital, she showed signs of bruising and had been dead for several hours.

On November 16, 2007, both Mr. Gomez and Ms. Lopez were indicted on two counts of felony murder and three counts of aggravated child abuse.  See Tenn. Code Ann. §§ 39-13-202(a)(2), -15-402(a) (2006).  Their consolidated trials were conducted from September 23 to September 26, 2008.

At trial, the State presented evidence demonstrating that the fatal injuries were inflicted on the victim between approximately 10:00 p.m. on March 2, 2007, and 3:00 a.m. on March 3, 2007.  The State's evidence showed that Ms. Lopez went to work at approximately 4:00 p.m. on March 2, 2007, and returned home after her shift ended at 12:15 a.m. on March 3, 2007.  The State also presented evidence that Mr. Gomez was with the victim from the time Ms. Lopez went to work until the victim was taken to the hospital the next morning.

Ms. Lopez's sister, Josefina Lopez, testified that the victim appeared healthy and happy two days before she died but that she had seen a scratch on the victim's eye.  Ms. Lopez's sister attributed the scratch to the victim's long fingernails and told Ms. Lopez that she needed to cut the victim's fingernails.

A week before the victim died, Mr. Gomez, Ms. Lopez, and the victim moved into a two-bedroom apartment with another couple, Francisco Sontay and Maria Chrisanta Ixpata. Mr. Gomez, Ms. Lopez, and the victim shared a bed in their bedroom.  Another roommate, Juan Antonio Sis Garcia, slept on the couch in the living room.

Mr. Sontay testified that when he came home on the afternoon of March 2, 2007, the victim was on the sofa, Ms. Lopez was cooking in the kitchen, and Mr. Gomez was in their bedroom.  At that time, the victim was laughing and appeared healthy and happy.  Mr. Sontay went to work.  Mr. Gomez was in his bedroom when Mr. Sontay returned at approximately

9:30 p.m. Mr. Sontay testified that he was watching television with Ms. Ixpata and Mr. Sis Garcia when Ms. Lopez came home. Mr. Sontay testified that Ms. Lopez went into her bedroom, came out after a few minutes to get something from the kitchen, and returned to her bedroom. Mr. Sontay testified that he never saw Mr. Gomez or Ms. Lopez injure the victim.

Mr. Sis Garcia testified that he was lying down in the living room when Ms. Lopez came home from work at approximately midnight on the day the victim died. He did not speak to Ms. Lopez when she came home. He testified that he never saw Mr. Gomez or Ms. Lopez injure the victim and that the victim appeared to be happy every time he saw her.

Ms. Ixpata testified that on March 2, 2007, she saw the victim in the afternoon and that the victim was fine. She described the victim as a cute, happy baby, and she testified that she never saw Mr. Gomez or Ms. Lopez injure the victim.

The State, however, presented testimony that approximately three days before the victim's death, Mr. Gomez told a co-worker, Francisco Javier Diaz Manzo, that the victim had injured her head and that Mr. Gomez was afraid he would be arrested if he took the victim to a doctor.

Ms. Lopez chose to testify in her own defense at trial. Prior to her testimony, the State requested permission to cross-examine Ms. Lopez about "issues regarding domestic violence." Ms. Lopez's counsel told the trial court that he did not intend to question her concerning incidents in which Mr. Gomez allegedly had assaulted Ms. Lopez. The trial court reserved ruling on the issue but indicated that the State could cross-examine Ms. Lopez about the assaults if her testimony contradicted her prior statements.

On direct examination, Ms. Lopez testified that Mr. Gomez and the victim were asleep when she got home. Ms. Lopez went to bed approximately five minutes after arriving, and she slept through the victim's ordinary feeding time between 4:00 a.m. and 5:00 a.m. because the victim did not wake her. Ms. Lopez awakened briefly but thought the victim was asleep and went back to sleep. Ms. Lopez slept until 9:00 a.m., at which time she realized that something was wrong with the victim and she and Mr. Gomez took the victim to the hospital.

Ms. Lopez stated that she did not notice any injuries on the victim until a detective told her about bruising on the victim's body. Ms. Lopez stated that she had never seen Mr. Gomez mistreat the victim and that if she had seen mistreatment she would have called the police and filed a complaint. She also stated that if Mr. Gomez had mistreated the victim she would have sought medical treatment for the victim. Ms. Lopez was not questioned

concerning any incidents in which Mr. Gomez assaulted her, and she did not offer such testimony in response to questioning by her counsel.

On cross-examination, Mr. Gomez's counsel asked Ms. Lopez, "Did you ever think [Mr. Gomez] could hurt his own daughter?" Ms. Lopez responded, "No." Mr. Gomez's counsel then asked, "Do you think that he could hurt her today at this moment in time?" Ms. Lopez responded, "I don't know what to believe." Mr. Gomez's counsel did not question Ms. Lopez concerning any assaults against her by Mr. Gomez.

The trial court ruled sua sponte that Mr. Gomez's counsel had "opened the door to everything." The trial court therefore permitted the State to cross-examine Ms. Lopez concerning statements Ms. Lopez had made previously concerning Mr. Gomez's assaults against her.

Ms. Lopez admitted during cross-examination by the State that when police interviewed her after the victim's death she had denied that Mr. Gomez ever hit her. Ms. Lopez agreed, however, that she sought assistance from the police after Mr. Gomez assaulted her on an earlier occasion. In addition, Ms. Lopez admitted that she told one of her co-workers about multiple incidents in which Mr. Gomez had assaulted her. The trial court gave a limiting instruction to the jury that the evidence of Mr. Gomez's prior assaults against Ms. Lopez could be used only to assess Ms. Lopez's "credibility and to assess her knowledge that is a required element of this situation." The trial court also instructed the jury that the evidence of Mr. Gomez's assaults against Ms. Lopez could not be used to determine Mr. Gomez's guilt.

During its closing argument, the State argued that Mr. Gomez's prior assaults against Ms. Lopez demonstrated that Ms. Lopez "knew the dangers and the risks of [Mr. Gomez's] behavior, and she put her child in harm's way." The State also made numerous references to Ms. Lopez's inconsistent statements about the assaults. The State used Ms. Lopez's inconsistent statements to attack her credibility by stating that "she lied repeatedly about that domestic violence episode" and that "she t[ook] the witness stand and promise[d] to tell the truth and repeatedly lie[d]." The State also argued that Ms. Lopez's inconsistent statements "reflect[ed] consciousness of guilt. They reflect criminal responsibility."

The jury convicted Ms. Lopez of two counts of facilitation of first degree murder and two counts of aggravated child abuse. The jury acquitted Ms. Lopez of a third count of

aggravated child abuse. The trial court merged both counts of facilitation of felony murder and sentenced Ms. Lopez to an effective sentence of twenty-five years.[1]

On appeal, the Court of Criminal Appeals held that the doctrine of curative admissibility permitted the State to cross-examine Ms. Lopez about the prior occasions when Mr. Gomez assaulted her and that the evidence was sufficient to support Ms. Lopez's convictions. Gomez, 2010 WL 3528982, at *20-22. We granted Ms. Lopez permission to appeal.

## II. Analysis

Ms. Lopez has raised two issues on appeal: (1) whether the trial court and the Court of Criminal Appeals erred in determining that evidence of Mr. Gomez's assaults against Ms. Lopez was admissible; and (2) whether the evidence was sufficient to support Ms. Lopez's conviction. We conclude that the trial court erred in permitting the admission of evidence of Mr. Gomez's assaults against Ms. Lopez and that the error was not harmless. We therefore do not reach the second issue raised by Ms. Lopez.

We review a trial court's decision to admit evidence by determining if the trial court abused its discretion. State v. Gilliland, 22 S.W.3d 266, 270 (Tenn. 2000). A decision to admit evidence will be reversed "only when the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning" and the admission of the evidence "caused an injustice to the party complaining." Gilliland, 22 S.W.3d at 270 (quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)) (internal quotation marks omitted).

In this case, the State has advanced various theories for the admissibility of the evidence of Mr. Gomez's assaults against Ms. Lopez at trial and on appeal. We address each of these theories in turn.

### *Knowledge*

The trial court admitted the evidence of Mr. Gomez's assaults against Ms. Lopez as substantive evidence to prove Ms. Lopez's "knowledge that is a required element of this situation." In its closing argument, the State argued extensively that Ms. Lopez knew that Mr. Gomez was a risk to their daughter and that she was therefore guilty of child abuse or

---

[1] The jury also convicted Mr. Gomez of both counts of felony murder and three counts of aggravated child abuse. The Court of Criminal Appeals overturned one of his convictions for aggravated child abuse. State v. Gomez, No. M2008-02737-CCA-R3-CD, 2010 WL 3528982, at *29 (Tenn. Crim. App. Sept. 10, 2010). Mr. Gomez has not appealed to this Court.

child neglect. On appeal, Ms. Lopez has asserted that the trial court "elevated 'other crimes' evidence to the status of an element of the offense." We agree.

Evidence of Mr. Gomez's assaults on Ms. Lopez is admissible only to the extent that it is relevant. See State v. DuBose, 953 S.W.2d 649, 653 (Tenn. 1997); see also Tenn. R. Evid. 401, 402. The evidence of Mr. Gomez's assaults on Ms. Lopez is relevant if it made "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. We are required to examine the elements of the charged offenses to determine the admissibility of evidence demonstrating Ms. Lopez's "knowledge." See DuBose, 953 S.W.2d at 653. Construction of a statute is a question of law, which we review de novo. State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001).

To be an element of the charged offenses, Ms. Lopez's "knowledge" could take three forms: knowledge as an element of child abuse or child neglect, knowledge required for Ms. Lopez to be criminally responsible for Mr. Gomez's actions, or knowledge sufficient to prove that Ms. Lopez facilitated a crime committed by Mr. Gomez.[2] We examine each of these types of knowledge in turn.

Ms. Lopez was charged with aggravated child abuse or neglect pursuant to Tennessee Code Annotated section 39-15-402 (2006).[3] Although the statutes for child abuse and child neglect have now been amended to include "child endangerment," the statute in effect at the time of the victim's death did not include provisions for "child endangerment." Compare

---

[2] The element of knowledge required for facilitation is also required for criminal responsibility. Facilitation therefore is a lesser-included offense of criminal responsibility. State v. Burns, 6 S.W.3d 453, 470 (Tenn. 1999).

[3] Tennessee Code Annotated section 39-15-402 (2006) defines aggravated child abuse or neglect in terms of the definition of child abuse or neglect found in Tennessee Code Annotated section 39-15-401 (2006). Tennessee Code Annotated section 39-15-401 (2006) provides:

> (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury commits a Class A misdemeanor; provided, however, that, if the abused child is six (6) years of age or less, the penalty is a Class D felony.

> (b) Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is six (6) years of age or less, the penalty is a Class E felony.

Tenn. Code Ann. § 39-15-401(c) (2010)[4] <u>with</u> Tenn. Code Ann. § 39-15-401 (2006). Under the amended statutory scheme, a parent or custodian who knowingly exposes or fails to protect a child from abuse or neglect that results in injury commits the crime of "child endangerment." <u>See</u> Tenn. Code Ann. § 39-15-401(c) (2010).[5] The provision that subjects a parent to criminal liability for exposing or failing to protect a child from abuse or neglect, however, was not part of the statute under which Ms. Lopez was charged.

An amendment to a statute raises a presumption that the General Assembly intended to change existing law. <u>Lavin v. Jordon</u>, 16 S.W.3d 362, 369 (Tenn. 2000); <u>Dunn v. Hackett</u>, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992). The amendment of the statute to include the new offense of child endangerment demonstrates that child endangerment, as described in Tennessee Code Annotated section 39-15-401(c) (2010), was not an offense under Tennessee Code Annotated section 39-15-401 (2006). As a result, we conclude that to convict Ms. Lopez of aggravated child abuse or neglect under the statute in effect in 2007, the State was not required to demonstrate that Ms. Lopez had "knowledge" that Mr. Gomez would abuse or neglect their daughter. Any evidence that Ms. Lopez had "knowledge" that Mr. Gomez had a propensity for violence was therefore irrelevant for the purpose of proving child abuse

---

[4] Tennessee Code Annotated section 39-15-401(c) (2010) provides:

(1) A parent or custodian of a child eight (8) years of age or less commits child endangerment who knowingly exposes such child to or knowingly fails to protect such child from abuse or neglect resulting in physical injury to the child.

(2) For purposes of this subsection (c):

(A) "Knowingly" means the person knew, or should have known upon a reasonable inquiry, that abuse to or neglect of the child would occur which would result in physical injury to the child. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary parent or legal custodian of a child eight (8) years of age or less would exercise under all the circumstances as viewed from the defendant's standpoint; and

(B) "Parent or custodian" means the biological or adoptive parent or any person who has legal custody of the child.

(3) A violation of this subsection (c) is a Class A misdemeanor.

[5] We observe that the amended statutory scheme requires different jury instructions for charges of child endangerment and child abuse or neglect. <u>Compare</u> 7 Tenn. Practice: Tennessee Pattern Jury Instructions Criminal 21.03(a) (15th ed. 2011) (child endangerment) <u>with</u> 7 Tenn. Practice: Tennessee Pattern Jury Instructions Criminal 21.02 (15th ed. 2011) (child abuse or neglect).

or child neglect under the version of the criminal code in effect in 2007. See Tenn. R. Evid. 401. Irrelevant evidence is inadmissible. Tenn. R. Evid. 402.

In the alternative, "knowledge" could be required to show that Ms. Lopez was criminally responsible for Mr. Gomez's actions. See Tenn. Code Ann. § 39-11-402 (2010). To demonstrate that Ms. Lopez was criminally responsible for Mr. Gomez's actions, the State must prove that Ms. Lopez intended to "promote or assist" the offense or to "benefit in the proceeds or results" of the offense. Tenn. Code Ann. § 39-11-402(2), (3). To demonstrate criminal responsibility for the acts of another, the State must therefore demonstrate that the defendant "knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." State v. Dorantes, 331 S.W.3d 370, 386 (Tenn. 2011).

Under the facts of this case, however, evidence that Mr. Gomez had assaulted Ms. Lopez on a prior occasion does not make it more probable or less probable that Ms. Lopez intended to promote, assist, or otherwise benefit from the offense against the victim. Tenn. Code Ann. § 39-11-402(2), (3). The evidence of Mr. Gomez's assaults on Ms. Lopez therefore is irrelevant to demonstrate Ms. Lopez's shared criminal intent and may not be admitted for this purpose. See Tenn. R. Evid. 401, 402.

Finally, a person is criminally liable for facilitation of a felony if, without the intent required for criminal responsibility, that person knows "that another intends to commit a specific felony" and "knowingly furnishes substantial assistance" for the commission of the specific felony. Tenn. Code Ann. § 39-11-403 (2010). In this case, however, evidence of Mr. Gomez's assaults against Ms. Lopez does not demonstrate that it is more probable or less probable that Ms. Lopez knew that Mr. Gomez intended to commit the offense of child abuse or child neglect. As a result, evidence of Mr. Gomez's assaults against Ms. Lopez is irrelevant and inadmissible to prove facilitation. See Tenn. R. Evid. 401, 402.[6]

---

[6] In the Court of Criminal Appeals, the State argued that Tennessee Rule of Evidence 404(b) permits the admission against Ms. Lopez of evidence of Mr. Gomez's prior assaults against her. We have previously held that in the context of Rule 404(b), "a person" is the defendant who allegedly committed the "other crimes, wrongs, or acts," Tenn. R. Evid. 404(b). State v. Stevens, 78 S.W.3d 817, 837 (Tenn. 2002); see also DuBose, 953 S.W.2d at 653 ("Evidence of crimes, wrongs or acts, if relevant, are not excluded by Rule 404(b) if they were committed by a person other than the accused . . . ."). In this case, the assaults were committed by Mr. Gomez. Rule 404(b) therefore is inapplicable as to Ms. Lopez.

The admission of evidence of one defendant's prior bad acts against a co-defendant may be unfairly prejudicial even with a limiting instruction. See Tenn. R. Evid. 404(b)(4). Mr. Gomez has not appealed his case, and we therefore do not reach the issue of whether the admission of the domestic violence evidence against Ms. Lopez in their joint trial was unfairly prejudicial to Mr. Gomez.

Even if the evidence of Mr. Gomez's assaults against Ms. Lopez had been admissible, the admission of the evidence would be subject to the requirements of Tennessee Rule of Evidence 403. Evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403. In this case, any probative value of the evidence was extremely limited, and the evidence was highly prejudicial because it risked introducing extraneous issues and causing the jury to decide the case on an improper basis. See DuBose, 953 S.W.2d at 654.

*Opening the Door*

We have concluded that the evidence of Mr. Gomez's assaults against Ms. Lopez was not admissible as substantive evidence against Ms. Lopez. The trial court, however, ruled that Mr. Gomez's counsel "opened the door" to evidence of the assaults by asking Ms. Lopez if she believed that Mr. Gomez could have hurt their daughter.[7]

Even if evidence is inadmissible, a party may "open the door" to admission of that evidence. A party opens the door to evidence when that party "introduces evidence or takes some action that makes admissible evidence that would have previously been inadmissible." 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039 (2d ed. 1987).

The most common manner by which a party opens the door to inadmissible evidence is by raising the subject of that evidence at trial. When a party raises a subject at trial, the party "expand[s] the realm of relevance," and the opposing party may be permitted to present evidence on that subject. 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039.1; see also Clark v. State, 629 A.2d 1239, 1242 (Md. 1993) ("The 'opening the door' doctrine is really a rule of expanded relevancy . . . .").

Although raising a subject at trial is one manner of opening the door to otherwise inadmissible evidence, the concept of "opening the door" is "notoriously imprecise." 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039. Although the doctrine arises from the common law tradition of evidence, cf. Roger C. Park et al., Evidence

---

[7] Neither party has questioned whether the cross-examination of a defendant on a subject by counsel for a co-defendant may "open the door" to further cross-examination on that subject by the State. Cf. United States v. White, 887 F.2d 267, 270 (D.C. Cir. 1989) ("The prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a co-defendant."). This issue, as well as others addressed in this opinion, underscores the difficulty in pursuing joint trials for co-defendants who are charged with abuse of a child. Neither co-defendant moved for severance in this case. Although we decline to require the severance of the trials of defendants in similar cases, trial courts should give motions to sever serious consideration when such motions are made.

Law § 1.11 (3d ed. 2011) (describing "curative admissibility" as a common law doctrine), our Rules of Evidence contain numerous examples by which otherwise inadmissible evidence may become admissible as a result of the action of a party in the case. For example, if evidence of prior bad acts of a defendant is inadmissible, the defendant may open the door to admission of that evidence by putting his character at issue. Tenn. R. Evid. 404(a)(1), (2); see also Tenn. R. Evid. 405(a). A party may also "open the door" to evidence of a witness's truthful character by attacking the reputation of a witness for truthfulness. Tenn R. Evid. 608(a). In short, "opening the door" is an equitable principle that permits a party to respond to an act of another party by introducing otherwise inadmissible evidence.

The trial court's comments prior to the State's cross-examination of Ms. Lopez provide insight into the trial court's ruling that the door had been opened to testimony concerning Mr. Gomez's assaults against Ms. Lopez. The trial court stated that by asking Ms. Lopez if Mr. Gomez could hurt their daughter, Mr. Gomez's counsel had "ask[ed] her an opinion on his character." This statement reflects the trial court's understanding of Ms. Lopez's response as a general statement of Mr. Gomez's nonviolent nature.

The trial court's understanding of Ms. Lopez's response is further reflected in the trial court's comments during the sentencing hearings for both Mr. Gomez and Ms. Lopez. At Ms. Lopez's sentencing hearing, the trial court stated, "Ms. Lopez said clearly, unquestionably, that Mr. Gomez–she didn't think he would hurt anybody, he would not do that." At Mr. Gomez's sentencing hearing, the trial court stated that Ms. Lopez opened the door "by clearly saying that Mr. Gomez would not do this, would not hurt anybody."

The trial court attached too much significance to Ms. Lopez's testimony that she did not believe that Mr. Gomez could hurt his daughter. Contrary to the statements of the trial court, Ms. Lopez clearly stated that she did not think that Mr. Gomez could have hurt his daughter. Ms. Lopez did not testify that Mr. Gomez would not hurt anybody. Ms. Lopez did not make a sweeping claim of Mr. Gomez's nonviolent nature that would be contradicted by her knowledge of Mr. Gomez's prior assaults against her.

Had Ms. Lopez testified as a character witness for Mr. Gomez, testimony about Ms. Lopez's knowledge of Mr. Gomez's prior violent acts could be admissible pursuant to Tennessee Rule of Evidence 404(a) to impeach Ms. Lopez. See Tenn. R. Evid. 404(a)(1), 405(a). When evidence of a defendant's prior bad acts is admitted pursuant to Rule 404(a), Rule 405(a) provides the procedures that must be followed. In addition, when a trial court permits cross-examination of a character witness concerning specific instances of a defendant's conduct, the trial court must provide an instruction limiting consideration of the evidence for the purpose of evaluating the character witness's credibility. State v. Nesbit, 978 S.W.2d 872, 883 (Tenn. 1998). The State did not raise Rule 404(a) as a basis for the

admission of the evidence, and the trial court, understandably, did not follow the requirements of Tennessee Rule of Evidence 405(a) for admitting evidence of Mr. Gomez's character. Even if the evidence of Mr. Gomez's prior assaults was admissible to impeach Ms. Lopez's knowledge about Mr. Gomez's character, the evidence would not be admissible as substantive evidence.

We next turn to whether the questioning of Ms. Lopez expanded the realm of relevance and permitted the State to present evidence on the subject of Mr. Gomez's prior assaults against Ms. Lopez. The cross-examination of Ms. Lopez by Mr. Gomez's counsel initially raised the subject matter of the abuse of the victim and Ms. Lopez's knowledge and beliefs concerning the actions of Mr. Gomez. On the basis of this testimony, the State was permitted to question Ms. Lopez concerning Mr. Gomez's acts of violence against Ms. Lopez. The abuse of the parties' daughter and the assaults against Ms. Lopez involved two different victims and different incidents. The record does not reflect that Mr. Gomez's assaults against Ms. Lopez also injured the victim or put the victim at risk of injury at the time of the assaults. The subject matter is not the same, and introducing one of these subjects does not "open the door" by making the other subject relevant. See 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039.1; cf. State v. Riels, 216 S.W.3d 737, 746 (Tenn. 2007) (holding that the trial court committed error when it ruled sua sponte that an expression of remorse for a crime opened the door to cross-examination about the details of the crime). We therefore conclude that the trial court erred in ruling that the door had been opened to cross-examination of Ms. Lopez concerning prior occasions when Mr. Gomez had assaulted her.

The State, of course, was free to question Ms. Lopez about her knowledge of Mr. Gomez's actions toward the victim. The subject of Mr. Gomez's abuse of the victim was an element of the offense charged, and the State could cross-examine Ms. Lopez on this subject. The State fully cross-examined Ms. Lopez concerning her knowledge of Mr. Gomez's treatment of the victim. For example, the State questioned Ms. Lopez about a prior incident in which Mr. Gomez allegedly caused pain to the victim by squeezing an area of the victim's leg where she had recently been vaccinated. Ms. Lopez denied that Mr. Gomez had done so. The State presented a rebuttal witness who said that Ms. Lopez had told her that after the vaccination, Mr. Gomez had "given [the victim] a little swat on the backside because [the victim] was crying a lot."

*Curative Admissibility*

A doctrine related to "opening the door" is the doctrine of "curative admissibility," which has been described as "fighting fire with fire." 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039. Curative admissibility permits the admission of

inadmissible evidence by a party in response to the opposing party admitting inadmissible evidence. 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039.3.

In the Court of Criminal Appeals, the State argued that the evidence of Mr. Gomez's prior assaults against Ms. Lopez was admissible pursuant to the doctrine of curative admissibility. On appeal to this Court, the State "concedes that the admissibility of this evidence is not controlled by the doctrine of curative admissibility" because Ms. Lopez's response to the question from Mr. Gomez's counsel was not inadmissible.[8] The need to admit evidence to "cure" inadmissible evidence did not arise.

This Court has not expressly adopted the doctrine of curative admissibility. See State v. Land, 34 S.W.3d 516, 530 n.11 (Tenn. Crim. App. 2000); see also State v. Fullilove, No. W2009-01113-CCA-R3-CD, 2010 WL 4538122, at *5 (Tenn. Crim. App. Nov. 2, 2010) (declining to apply the doctrine of curative admissibility). We do not reach the issue of "curative admissibility" of the evidence that was addressed by the Court of Criminal Appeals, Gomez, 2010 WL 3528982, at *20-22, and we leave the consideration of this doctrine for a more appropriate case.

*Credibility*

We next consider whether the evidence of the prior incidents of Mr. Gomez's assaults against Ms. Lopez was relevant to Ms. Lopez's credibility, as asserted by the State. To attack the credibility of a witness, a party may question the witness concerning any matter that has been fairly raised by the evidence. A party may not introduce a subject that is inadmissible to attack the credibility of a witness. See State v. West, 844 S.W.2d 144, 149 (Tenn. 1992) (quoting Hatchett v. State, 552 S.W.2d 414, 415 (Tenn. Crim. App. 1977)).

We have determined that the door was not opened to evidence concerning the assaults. The evidence concerning the assaults was not admissible on any other basis asserted by the State. Prior to Ms. Lopez's direct testimony, the trial court stated that if Ms. Lopez's testimony contradicted her previous statements, she could be cross-examined about those statements. See Tenn. R. Evid. 613. Ms. Lopez's testimony that she did not think Mr.

---

[8] We observe that appellate review in this case has been made more difficult by the State's evolving position as to the grounds for admissibility of the evidence. Abandoning one argument for admission of evidence in favor of another position that was not considered in the court below is not ideal. Cf. State v. Leach, 148 S.W.3d 42, 55 (Tenn. 2004) ("[A] party may not litigate an issue on one ground, abandon that ground post-trial, and assert a new basis or ground on appeal.").

Gomez could hurt their daughter did not contradict the prior statements that Ms. Lopez had made concerning injuries inflicted on her by Mr. Gomez.[9]

Permitting the introduction of an inadmissible subject to impugn the credibility of the witness would permit the State to "open the door" to its own evidence. See 21 Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5039.1 (noting that a party cannot open the door to its own evidence). Ms. Lopez's credibility on the subject of Mr. Gomez's assaults against her would not have arisen but for the improper admission of the evidence concerning the assaults. We therefore conclude that the trial court erred in permitting the jury to consider the evidence of Mr. Gomez's assaults against Ms. Lopez for the purpose of demonstrating Ms. Lopez's credibility.

*Harmless Error*

Having determined that the trial court improperly admitted the evidence of Mr. Gomez's assaults against Ms. Lopez, we consider whether this error was harmless. Errors in the admission of evidence are normally non-constitutional. State v. Rodriguez, 254 S.W.3d 361, 375 (Tenn. 2008) (citing State v. Powers, 101 S.W.3d 383, 397 (Tenn. 2003)). Non-constitutional errors are harmful and demand reversal when "considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). The more proof exceeds what is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it is that the improperly admitted evidence was harmful. Gilliland, 22 S.W.3d at 274.

The State produced little evidence demonstrating Ms. Lopez's involvement in the crime. The State called witnesses who lived with Mr. Gomez and Ms. Lopez at the time of the victim's death, and none of them testified that they had witnessed abuse of the victim. Instead, these witnesses testified that the victim was happy and healthy. The most damaging evidence that the State produced against Ms. Lopez was that the fatal injuries were inflicted on the victim sometime between 10:00 p.m. and 3:00 a.m., a period of time when Mr. Gomez was present. Ms. Lopez arrived home from work sometime after 12:15 a.m., placing her in the residence for less than two hours and forty-five minutes of the five-hour window of opportunity.

_____

[9] The State has not raised Ms. Lopez's prior inconsistent statements as a basis for admission of this evidence. Had the trial court permitted this testimony pursuant to Tennessee Rule of Evidence 613, the statements would be admissible only to impeach Ms. Lopez, not as substantive evidence, and a limiting instruction would be required. State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982); see also State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998).

Instead of producing evidence that Ms. Lopez participated in the crime, the State argued that Ms. Lopez "knew the dangers and the risks of [Mr. Gomez's] behavior, and she put her child in harm's way." As previously described, at the time of the victim's death, child endangerment was not a violation of Tennessee Code Annotated section 39-15-401, and the State encouraged the jury to make an improper decision on this basis.

The State also used the cross-examination as to Mr. Gomez's assaults against Ms. Lopez to introduce conflicting statements by Ms. Lopez concerning the prior assaults. Using these conflicting statements, the State repeatedly asserted in cross-examination and closing argument that Ms. Lopez had lied, that she was not credible, and that the lies "reflect[ed] consciousness of guilt" and "reflect[ed] criminal responsibility." Ms. Lopez was the only witness in her defense, and her credibility was essential to her case.

The admission of the evidence of Mr. Gomez's prior assaults against Ms. Lopez and the extensive use of this evidence by the State not only to discredit the only witness for the defense but also to demonstrate her guilt more probably than not affected the judgment. See Tenn. R. App. P. 36(b); Gilliland, 22 S.W.3d at 274. We therefore conclude that the trial court's admission of the evidence concerning Mr. Gomez's assaults against Ms. Lopez was not harmless.

We vacate Ms. Lopez's convictions and remand the case for a new trial. Ms. Lopez's issue concerning the sufficiency of the evidence is pretermitted. See State v. Cannon, 254 S.W.3d 287, 308-09 (Tenn. 2008) (pretermitting the issue of sufficiency of the evidence in a case in which the defendant's conviction was reversed on other grounds and the case was remanded for a new trial).

### III. Conclusion

The trial court erroneously admitted evidence of Mr. Gomez's prior assaults against Ms. Lopez. The erroneous admission of the evidence was not harmless. Accordingly, we vacate Ms. Lopez's conviction and remand the case for a new trial. Costs of this appeal are taxed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE

-14-