IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 24, 2025

**STATE OF TENNESSEE v. DEVONTA IVY**

**Appeal from the Circuit Court for Fayette County**
**No. 24-CR-19     J. Weber McCraw, Judge**

_____

**No. W2024-01491-CCA-R3-CD**

_____

The Defendant, Devonta Ivy, was convicted by a Fayette County jury of aggravated robbery, unlawful possession of a weapon, theft of property, and evading arrest. The trial court entered judgments ordering the Defendant to serve an effective eleven-year sentence consecutively to a previously unserved sentence from Mississippi. On appeal, the Defendant claims that the evidence was insufficient to support each conviction and that the trial court erred in admitting evidence of a prior conviction. Following our review and pursuant to Tennessee Rule of Criminal Procedure 36, we remand for entry of corrected judgments for Counts Three and Four due to clerical errors. Otherwise, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for Entry of Corrected Judgments**

STEVEN W. SWORD, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

J. Colin Rosser, Somerville, Tennessee, for the appellant, Devonta Ivy.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Falen Chandler and Erik Haas, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.     FACTUAL AND PROCEDURAL HISTORY**

The Defendant was indicted by a Fayette County Grand Jury with the offenses of aggravated robbery with a deadly weapon (Count One), unlawful possession of a weapon with a prior crime of violence of armed robbery (Count Two), theft of property valued between $1,000 and $2,500 (Count Three), and evading arrest (Count Four). This matter proceeded to trial by jury on July 30, 2024. The following testimony was presented at trial.

## A. STATE'S PROOF

The parties entered a written stipulation of proof that the Defendant had previously been convicted of a felony crime of violence on October 9, 2018, in the State of Mississippi. In the agreed order outlining the stipulation, the court ordered the State to "not mention, present any evidence and/or testimony regarding Defendant's past conviction of Armed Robbery unless Defendant, through himself or through counsel, opens the door." The State entered the stipulation as Exhibit 1 at the beginning of the trial.

Antonius Ayub testified that he was working as a cashier at the Exxon station on US Route 64 in Oakland, Tennessee, on November 25, 2023. A tall black male wearing black clothing and a black mask entered the store, displayed a handgun, and demanded that Mr. Ayub give him "the money." Mr. Ayub complied and gave the person cash from the store register, which he believed to be somewhere in the range of $800 to $1,200. The assailant then waved the gun toward Mr. Ayub and ordered him to move back and to sit on the floor. He then told Mr. Ayub not to call the police and fled the store. After this person left, Mr. Ayub activated the alarm system, walked out to the parking lot, and observed the man who robbed him across the street running between a bank and another gas station. Mr. Ayub then called the police and told them the direction of the assailant's flight.

Mr. Ayub described fearing that his life would be taken away and that he would not see his family and friends again. He had to take time off from work after the robbery to recover from the ordeal. Mr. Ayub stated that the person who robbed him was African American based upon his ability to observe the skin on his hands and around his eyes. He described the person's clothing as a black hoodie with a black shirt underneath, dark pants, and a black mask with a white star over his face. Mr. Ayub further stated that he did not see any tattoos on the person's hand, because he was scared and looking at the gun.

The police obtained security videos from the Exxon station that captured the incident from multiple angles. When these videos were shown as evidence, Mr. Ayub described the events occurring on the videos to the jury.

Officer A.J. Craig, with the Oakland Police Department (OPD), arrived at the scene around the same time as his partner, Officer John Ford. Officer Craig drove in the direction where the suspect was last seen running. He observed two black males walking along the

road about one-quarter of a mile away from the Exxon, one of whom he described as matching the description of the suspect given by dispatch. He stated one individual was tall and slender, and the other one was shorter.

Officer Craig motioned to the individuals to approach his marked OPD truck. The individual matching the description of the robbery suspect jumped a fence and ran away. This behavior was captured on the officer's body-worn camera, and this video was introduced as an exhibit. Officer Craig acknowledged during cross-examination that his body camera video appeared to show some white on the suspect's clothing, which was not mentioned in the description given by dispatch; however, Officer Craig was unclear if the white coloring was on the clothing or was just glare on the video.

Officer Craig detained the other individual, who did not run and who was also wearing dark clothing with a Memphis Grizzlies logo. This second suspect was identified as J.L.,[1] a sixteen-year-old juvenile. J.L. stated that he had known the Defendant since he was "little." On the morning of the incident, the Defendant came to his home on Feathers Chapel Drive, where they "just chill[ed] in the shed" for a short period of time and decided to walk to the store. Along the way, they received a ride from an acquaintance of the Defendant,[2] who dropped them off at Bell Grove Church. From there, J.L. and the Defendant proceeded to walk toward the store; J.L. went to the Log Cabin,[3] but the Defendant went to the Exxon across the street from the Log Cabin and the Dollar General. After making a purchase, J.L. began walking toward home alone. The Defendant then emerged from some bushes around the side of a bank and rejoined J.L.

J.L. stated that the Defendant indicated to him that he had robbed the store. The Defendant showed him a handgun and money. He also saw a mask with an American flag design on it in the Defendant's pocket. J.L. further stated that when the police approached, the Defendant fled.

J.L. admitted he lied to the police at the scene when he said he did not know the identity of the person who ran from the police. After being transported to the police precinct and being joined by his guardians, J.L. told the investigator that the Defendant was the person he had been with and that the Defendant had informed him that he had robbed the Exxon. J.L. also identified the person on the Exxon security video as the Defendant based upon his clothing.

---

[1] It is the practice of this court to protect the identity of juveniles by using their initials.

[2] J.L. initially told the police that it was his cousin who gave them a ride.

[3] The Log Cabin was described as another gas station that looked like a log cabin.

J.L.'s grandmother testified that the Defendant came to her home on the day of the incident to see J.L. She stated that she had known the Defendant since he was small and that she loved him but did not like him coming to the house to see her minor grandson. After the Defendant arrived, she went back to her bedroom and only briefly saw her grandson before he and the Defendant went out to the storage area near the house. She did not know where the Defendant and J.L. went that day or what they were doing.

Christy Ivy, the Defendant's aunt, testified that the Defendant had been living with her mother, the Defendant's grandmother, around the time of the offense. Ms. Ivy found some black clothing and black shoes with a red Air Jordan logo that she believed belonged to the Defendant in her mother's home. She provided those items to the police. Ms. Ivy also stated that she believed the suspect on the Exxon video was the Defendant based upon the way he was walking. She acknowledged that she could not see the red Air Jordan logo on the shoes in the video.

OPD Lieutenant Kevin Perry testified that the police were unable to locate the Defendant on the day of the robbery after he was identified as the suspect, but the Defendant was eventually apprehended in Connecticut. Lieutenant Perry also stated that he could not see the red Air Jordan logo on the suspect's shoes in the Exxon video.

## B. DEFENSE PROOF

Raven Ivy, the Defendant's older sister who lived with the Defendant, testified that their aunt, Christy Ivy, did not regularly visit their house, but she occasionally would come by uninvited. Defense counsel initially asked Ms. Ivy if she would be "covering for [the Defendant] in any way." She answered, "No." He then asked her, "So would it [be] fair to say if you knew [the Defendant] had committed a crime or so, you would not cover for him?" Ms. Ivy responded, "Positive." Later, defense counsel questioned the witness concerning (1) whether she had ever seen the Defendant with a gun, (2) whether the Defendant had ever said anything to her about committing a robbery, (3) whether she had ever seen the Defendant with a mask with stars on it, and (4) whether she had seen the Defendant with any large amount of cash around November 25, 2023. Ms. Ivy responded in the negative to each of the questions. Defense counsel then repeated the question concerning whether the Defendant had ever mentioned anything to her about a robbery, and she again replied in the negative. Defense counsel then asked Ms. Ivy a third time whether the Defendant had ever mentioned anything to her about a robbery and asked her a second time whether the Defendant ever mentioned having a gun. This time he restricted the compound question to the period around November 25, 2023. Again, she answered in the negative.

On cross-examination, the State asked Ms. Ivy if she was aware of any prior convictions of robbery in the Defendant's past, and she replied, "No, ma'am." The State then asked, "And so would you be shocked to learn that he has, in fact, been convicted of an armed robbery in another state?" Defense counsel objected stating that he had not "opened the door" to the prior conviction. The State argued that the door had been opened when defense counsel broadly asked the witness if the Defendant had ever mentioned committing a robbery. Defense counsel argued that he had restricted the questions to the November 25th date in his follow up question. The trial court ruled that counsel had tried to "clean it up" but that he had already opened the door to the prior conviction twice. The State was allowed to proceed with questions about the Mississippi conviction.

Ms. Ivy testified that she would be surprised to learn that the Defendant had been convicted of a prior armed robbery. She was then shown a judgment form from the Clay County Circuit Court, West Point, Mississippi, indicating that the Defendant had pled guilty to armed robbery on October 9, 2018. This judgment form was introduced as an exhibit.

OPD Officer John Ford testified that there was a reference in the investigation that the suspect may have been wearing black and yellow. He also acknowledged that there had been another robbery about ten miles away from the Exxon a week prior to this incident and that no suspect had been arrested in that case.

C. INSTRUCTIONS, VERDICT, AND SENTENCE

The trial court instructed the jury on the applicable law after closing arguments. In relevant part regarding the charge of unlawful possession of a weapon, the trial court instructed:

> If you find from the proof that the defendant has been convicted of another crime or crimes [sic] than that for which he is presently on trial, then you may consider such evidence – you may not consider such evidence as proof of his disposition to commit the crime for which he is on trial.

After deliberation, the jury convicted the Defendant of each count as charged. The trial court sentenced the Defendant to serve an eleven-year sentence at a 100% service rate consecutively to his prior Mississippi conviction for armed robbery. Following the denial of his motion for new trial, the Defendant filed this timely appeal.

II.    ANALYSIS

The Defendant presents two issues for our review. First, he argues that the evidence was insufficient to sustain the jury's verdict as to each count. Second, he argues that the trial court erred in admitting testimony about the Defendant's prior conviction for armed robbery in violation of the pre-trial agreed order regarding his stipulation of a prior crime of violence. The State contends that the evidence is sufficient as to each conviction and that the evidence was sufficient to establish the identity of the Defendant as the perpetrator. In addition, the State argues that the evidence of the Defendant's prior armed robbery conviction was properly introduced. We will address each issue in turn.

## A. SUFFICIENCY OF THE EVIDENCE

Tennessee Rule of Appellate Procedure 13(e) provides that "[f]indings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." The standard of appellate review on a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted) (emphasis in original); *see also State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *see also State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000)). "On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom." *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007) (citing *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999)). "We do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). The same standard of review applies "whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *Williams*, 558 S.W.3d at 638 (first citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011), and then citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977)).

"[T]he identity of the perpetrator is an essential element of any crime," *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021) (citations omitted), that the State must prove beyond a reasonable doubt, *State v. Hardison*, 680 S.W.3d 282, 319 (Tenn. Crim. App. 2023). "Identification of a defendant as the person who committed the offense for which he or she is on trial is a question of fact for the jury's determination upon consideration of

all competent proof." *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005), *abrogated on other grounds by State v. Miller*, 638 S.W.3d 136 (Tenn. 2021). Identity may be established by circumstantial evidence alone. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006), *abrogated on other grounds by Miller*, 638 S.W.3d 136. "The jury decides the weight to be given to circumstantial evidence, and the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Id*. (internal quotations and citation omitted). "As with any sufficiency analysis, the State is entitled to the strongest legitimate view of the evidence concerning identity contained in the record, as well as all reasonable inferences which may be drawn from the evidence." *Hardison*, 680 S.W.3d at 319.

With these principles in mind, we now turn to the Defendant's sufficiency claim. In his brief, the Defendant summarizes the testimony and evidence presented. The Defendant challenges the credibility of trial witnesses, which he generally argues supports his argument that the evidence is insufficient to establish all the elements of the crimes charged beyond a reasonable doubt, the sufficiency of the evidence to establish identity, the sufficiency of the evidence on possession of a weapon, and the sufficiency of the evidence on possession of any stolen currency.

As charged in Count One, the Defendant was convicted of aggravated robbery which is a "robbery . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). A robbery is statutorily defined as the theft of property from another by violence or fear. Tenn. Code Ann. § 39-13-401(a). Thus, at trial, the State bore the burden of proving that the Defendant committed: (1) the theft of property from another, (2) by violence or fear, and (3) by the use or display of a deadly weapon or display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.

The proof at trial established that an individual wearing all black with a black American flag-themed mask over his face entered and robbed the Exxon Store in Oakland by displaying a handgun. J.L. testified that he was with the Defendant in the area around the time of the robbery and that the Defendant confessed to him that he "did them folks bad" and then displayed cash and a firearm. J.L. further identified the perpetrator as the Defendant from the security video showing the clothing of the suspect and identified the Defendant as the person who had fled from the police. In addition, the Defendant's aunt testified that she could tell the suspect on the video was the Defendant based upon the way he walked. She also found clothing like that worn in the robbery in the home where the Defendant had been living. The Defendant stipulated to having been previously convicted of a violent felony. Viewed in the light most favorable to the State, this evidence is

sufficient to establish each element of aggravated robbery as charged in Count One and the Defendant's identity as the offender for each of the offenses for which he was convicted.

The Defendant argues that there were inconsistencies in the testimony at trial, that J.L. lied to the police and had a motive to lie to the jury, that no physical evidence was presented connecting the Defendant to the robbery, that there was no evidence that the Defendant possessed the weapon or stolen cash, and that no one could positively identify the perpetrator because he was wearing a mask. However, the jury heard these arguments and rejected them, as was their right. This court will not reweigh the evidence or substitute its judgment for that of the jury where the evidence is sufficient to establish the identity of the Defendant as the offender. *Curry*, 705 S.W.3d at 183. The Defendant is not entitled to relief on this claim.

The Defendant also challenges his conviction of unlawful possession of a weapon, as charged in Count Two, which occurs when a person who "[h]as been convicted of a felony crime of violence" "commits an offense while unlawfully possessing a firearm." Tenn. Code Ann. § 39-17-1307(b)(1). At trial, the parties stipulated that the Defendant had been previously convicted of a felony crime of violence on October 9, 2018, in the State of Mississippi. Here, the Defendant challenges the sufficiency of the evidence of his possession of a firearm. J.L. testified that the Defendant showed him the firearm immediately after the robbery. Based upon their verdicts, the jury accredited J.L's testimony, and this evidence established that the Defendant possessed a firearm in Count Two, as well as in Count One. As stated above, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *Curry*, 705 S.W.3d at 183. This court finds the evidence is sufficient to support the Defendant's conviction of unlawful possession of a firearm.

As charged in Count Three, the Defendant was convicted of theft of property valued at "more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500)." Tenn. Code Ann. §§ 39-14-103, -105. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). As it relates to this count, the Defendant argues that the evidence was insufficient to establish his identity or that he possessed the stolen currency. However, the store clerk testified that he gave the Defendant money from the cash register, up to $1,200. Furthermore, J.L. testified that he observed the currency in the Defendant's possession and that the Defendant admitted taking the money during a robbery of the store. Witnesses identified the Defendant as the person in the videos from the Exxon store taking the cash during the robbery. This evidence supports the jury's conviction of the Defendant on the charge of theft in Count Three.

As charged in Count Four, the Defendant was convicted of evading arrest. "[I]t is unlawful for any person to intentionally . . . flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person." Tenn. Code Ann. § 39-16-603(a)(1)(A). Here, the evidence indicated that, after robbing the Exxon and meeting up with J.L., the Defendant showed J.L. the gun and money. The pair were then approached by Officer Craig who motioned for the Defendant to walk toward him. The evidence indicated the Defendant saw Officer Craig but chose to run away. J.L. identified the Defendant as the person who ran away, and Officer Craig testified the person who ran away matched the suspect in the robbery. This evidence is sufficient to support the jury's conviction of the Defendant on the charge of evading arrest in Count Four.

## B. INTRODUCTION OF PRIOR CONVICTION

The Defendant claims the trial court erred in allowing the State to introduce proof of his prior Mississippi conviction for armed robbery. In his brief, the Defendant makes a general argument that the admission of this proof violated Tennessee Rule of Evidence 403; the Sixth and Fourth Amendments to the United States Constitution; article I, section 9 of the Tennessee Constitution; and his due process rights. The State argues the constitutional challenges have been waived because the Defendant neither made a contemporaneous objection nor raised the issues in his motion for new trial. The State also argues that the Defendant's Rule 403 evidentiary challenge is waived because his only objection in the trial court was that he had not "opened the door." The State further claims the Defendant is not entitled to plain error relief on his Rule 403 evidentiary claim. We will address these claims separately.

Regarding his constitutional claims, the Defendant raises these claims for the first time on appeal. Therefore, we agree with the State that the constitutional claims are waived. *See State v. Willis,* 496 S.W.3d 653, 707 (Tenn. 2016); Tenn. R. App. P. 36(a); *see also State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. 1996), *overruled on other grounds by State v. White*, 362 S.W.3d 559 (Tenn. 2012).

Although the Defendant did not specifically argue at trial that the evidence should be excluded under Rule 403, he did contemporaneously object on the grounds that the "door had not been opened." In his motion for new trial, the Defendant again did not specifically refer to Rule 403, but he argued that the introduction of the specific prior conviction "was more prejudicial than probative in value to the State's case." As discussed below, issues of relevance play a crucial role in determining what evidence may be properly introduced when a door to otherwise inadmissible evidence has been opened. Therefore,

this court will examine the Defendant's Rule 403 claim in light of his objection at trial that the door to this evidence had not been opened.

A trial court's ruling on the admission of evidence based upon relevance will not be reversed unless the trial court abused its discretion. *See State v. Gomez*, 367 S.W.3d 237, 243 (Tenn. 2012); *State v. DuBose*, 953 S.W.2d 649, 652–53 (Tenn. 1997); *see also State v. Biggs*, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006). Thus, we will reverse the trial court's decision "only when the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning" and the admission of the evidence "caused an injustice to the party complaining." *State v. Gilliland*, 22 S.W.3d 266, 270 (Tenn. 2000) (internal quotations omitted) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

The Defendant agreed prior to trial to stipulate that he had a previous conviction for a crime of violence. The agreed order on the stipulation provided that "the State shall not mention, present any evidence and/or testimony regarding Defendant's past conviction of Armed Robbery unless Defendant, through himself or through counsel, opens the door." Presumably, based upon his Rule 403 argument, the Defendant agreed to the stipulation to prevent the danger of unfair prejudice that could occur if the jury heard that the prior conviction, which prohibited him from possessing a weapon, was essentially the same offense for which the Defendant was charged in this case. Other evidentiary rules aside, the stipulation order itself made proof of the prior armed robbery conviction inadmissible.

"Even if evidence is inadmissible, a party may 'open the door' to admission of that evidence. A party opens the door to evidence when that party 'introduces evidence or takes some action that makes admissible evidence that would have previously been inadmissible.'" *Gomez*, 367 S.W.3d at 246 (citing 21 Charles Alan Wright et al., *Federal Practice & Procedure Evidence* § 5039 (2d ed.1987)). "In short, 'opening the door' is an equitable principle that permits a party to respond to an act of another party by introducing otherwise inadmissible evidence." *Id.*

The concept of opening the door is rooted in fairness and truth seeking. *State v. Vance*, 596 S.W.3d 229, 250 (Tenn. 2020) (citing *Ramirez v. State*, 739 So.2d 568, 579 (Fla. 1999)). "Accordingly, . . . the remedy sought after a party has opened the door should be both relevant and proportional. The otherwise inadmissible evidence sought to be introduced by the opposing party should be limited to that necessary to correct a misleading advantage created by the evidence that opened the door." *Vance*, 596 S.W.3d at 250. It may not be used to inject prejudice. *Id.* at 251 (citing *State v. Wamala*, 972 A.2d 1071, 1076-1077 (N.H. 2009)). Furthermore, the justification for entering the otherwise inadmissible evidence must go beyond mere relevance to the initial evidence, *Wamala*, 972 A.2d at 1076, and may still be excluded if the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, *Vance*, 596 S.W.3d at 251 (citing

*State v. James*, 677 A.2d 734, 554 (N.J. 1996)); *see also State v. Forte*, No. E2022-01216-CCA-R3-CD, 2025 WL 1420366 at *19 (Tenn. Crim. App. May 16, 2025).

During the direct examination of defense witness Raven Ivy, the following exchange occurred:

Q: To your knowledge have you ever seen your brother with a gun?
A: No, I have not.
Q: Tell me whether or not did you see your -- has your brother ever said anything to you about committing a robbery?
A: No, sir.
Q: Tell me whether or not have you ever seen him with a mask with stars on it.
A: No, sir.
Q: And tell me whether or not you've ever seen him -- around November 25, 2023, did you see him with any large amount of cash?
A: No, sir.
Q: To your knowledge, has your brother ever mentioned to you about a robbery?
A: No, sir.
Q: Tell me whether or not he's ever mentioned to you about having a gun or committing a robbery --
A: No, sir.
Q: -- concerning the robbery on November 25th of 2023. So what you've testified today, if I'm hearing you correctly, he never has stated anything about committing a robbery in Oakland on November 25, 2023.
A: No, sir.

The witness was then tendered to the State for cross-examination. The witness testified she was not aware of the Defendant having ever been convicted of robbery. After she indicated she was not aware of any prior conviction, the State asked her about the Defendant's conviction for armed robbery in another state, and the Defendant objected, arguing he had not opened the door to the specifics of the prior conviction. The State and the trial court disagreed, and, over the Defendant's objection, the State was permitted to have the witness read portions of the judgment form for the Defendant's prior conviction for armed robbery into the record and to introduce the judgment form as an exhibit.

On direct examination, the defense presented evidence of the close relationship Ms. Ivy shared with her brother, the Defendant. The testimony presented a picture of how close the witness and the Defendant were and implied that she had greater knowledge of the Defendant than some State witnesses would have possessed. Ms. Ivy was also asked if she

would cover for the Defendant if she knew that he had committed a crime. She was then asked questions related to the Defendant possessing a gun, mask, or stolen currency and related to the Defendant and any robbery to which she clearly answered in the negative. This contrasted with the testimony of State witnesses, some of whom were also relatives of the Defendant.

Defense counsel used the temporal term "ever" four times while asking Ms. Ivy about her knowledge of her brother's possession of certain items or of her brother's statements about a robbery. He used the specific date of this offense, November 25, 2023, twice, but only after asking the question in the broader form without reference to a limiting date. Certainly, from these questions, the jury could have been led to believe that Ms. Ivy had no knowledge of any armed robbery committed by the Defendant at any time in his life, with whom she claimed to share a close relationship. Proof of the existence of such a prior conviction for robbery was relevant to impeach Ms. Ivy's testimony to show either that she was not as close to her brother as she claimed or that she would lie to cover for him.

The question of admissibility of the impeaching evidence when the "door is opened" does not end with relevance. As cited above, relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tenn. R. Evid. 403. "Evidence of a prior conviction that is the same or similar in nature to an offense being prosecuted is not per se inadmissible for impeachment purposes." *State v. Galmore*, 994 S.W.2d 120, 122 (Tenn. 1999). However, it "could improperly influence a jury to convict a defendant based on propensity evidence." *Id*.

Although Ms. Ivy's testimony did not provide substantial proof for the defense, it certainly implied that the Defendant's close family member was unaware of such behavior by the Defendant at any point in his life, not just related to this offense date. The probative value of whether Ms. Ivy was aware of the Defendant's prior conviction in refuting this implication was high. Furthermore, the Defendant had already stipulated that he had a prior conviction for a crime of violence. The introduction of the specific conviction, which admittedly was similar to one of the offenses for which he was on trial, would not have had the same level of prejudicial effect had the jury not heard the earlier stipulation as part of the State's case in chief. Additionally, the trial court instructed the jury prior to deliberation that if they found proof that the Defendant had been convicted of another crime other than that for which he was presently on trial, evidence of the prior conviction could not be considered as proof of his disposition to commit the crime for which he is on trial.

"The trial court is in the best position to gauge the prejudicial impact of particular testimony." *Vance*, 596 S.W.3d at 251 (citing *Wamala*, 972 A.2d at 1076-77). Here, the

trial court held that the door had been opened to the prior conviction and, by its ruling, implicitly determined that the danger of unfair prejudice did not substantially outweigh the probative value. *See Forte*, 2025 WL 1420366 at *22. The record supports the trial court's finding. Accordingly, we find that the trial court did not abuse its discretion.

### III. CLERICAL MISTAKES

Pursuant to Tennessee Rule of Criminal Procedure 36, this court may "at any time correct clerical mistakes in judgments . . . arising from oversight or omission." We observe clerical errors in the judgments for Counts Three and Four that require the entry of a corrected judgment form for each of those counts. In the indictment, Count Three charged the Defendant with theft, while Count Four charged the Defendant with evading arrest. However, the judgment forms list theft as Count Four and evading arrest as Count Three. This clerical error produced related errors in the section of the judgments for these two counts addressing concurrent sentences. Furthermore, the conviction for theft in Count Three should merge into the conviction for aggravated robbery in Count One. *See e.g. State v. Miller*, No. E202201040CCAR3CD, 2023 WL 6055984, at *9 (Tenn. Crim. App. Sept. 18, 2023), *perm. app. denied* (Mar. 7, 2024). Accordingly, this matter is remanded for the entry of corrected judgments as described.

### IV. CONCLUSION

Following our review of the record and based on the foregoing analysis, we affirm the judgments of the trial court and remand for entry of corrected judgments on Counts Three and Four.

s/ *STEVEN W. SWORD*
_____
STEVEN W. SWORD, JUDGE