IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 26, 2022 Session

## STATE OF TENNESSEE v. BRYAN A. ERWIN

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-114      Andrew M. Freiberg, Judge**

_____

**No. E2021-01232-CCA-R3-CD**

_____

A Bradley County jury convicted the defendant, Bryan A. Erwin, of simple assault and aggravated assault for which the trial court imposed an effective three-year sentence to be served in the Tennessee Department of Correction. On appeal, the defendant contends that the State committed prosecutorial misconduct at various times during the trial and that the trial court erred in certain evidentiary rulings and in sentencing. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court. Additionally, we remand for the entry of corrected judgment forms to reflect the appropriate conviction for count 1, for simple assault, and count 2, for aggravated assault.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TIMOTHY L. EASTER, JJ., joined.

Stephen S. Duggins, Chattanooga, Tennessee (on appeal); Charles Pope, Cleveland, Tennessee (at trial), for the appellant, Bryan A. Erwin.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Stephen D. Crump, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

This case stems from an apparent "road rage" incident involving the defendant and his two victims, Stacey and Jimmy Langford. The testimony at trial established that on

September 19, 2018, Ms. Langford pulled out of a parking lot and into the right-hand lane of Paul Huff Parkway in Bradley County, Tennessee. After completing the turn, Ms. Langford heard a horn and looked in her rearview mirror where she saw the defendant swerving into the left-hand lane on his motorcycle. The defendant began following Ms. Langford, continued honking his horn, and yelled at her "to pull the f*** over." Ms. Langford was scared. She called her husband, Mr. Langford, who advised her to come to his workplace, Derby Industries, approximately four miles away.

When Ms. Langford arrived at Derby Industries, Mr. Langford was standing outside of the gate waiting for her, and she parked behind the gate. The defendant parked outside of the gate, dismounted, and approached Mr. Langford. The defendant was pointing at Ms. Langford and yelling, "that f****** c***." The defendant chest bumped Mr. Langford, and Mr. Langford "shoved" the defendant. The defendant then returned to his motorcycle, pulled a gun from the saddlebag, and "[p]ut a round in the chamber." He approached Mr. Langford again, stating "Push me again, motherf****, I'll kill you." Mr. Langford then put his hands up and backed away. At one point, the defendant "ripped [his shirt] off in a very aggressive manner" and showed Mr. Langford scars on his back from surgery. The defendant placed the gun in his waistband but continued to verbally assault Mr. Langford until the police arrived.

Officers Scott Criddle and Michael Gunnell of the Cleveland Police Department responded to the scene. When Officer Criddle arrived, the defendant was shirtless with "a handgun tucked in his pants." Officer Criddle took the gun from the defendant, unloaded it, and secured it in his patrol vehicle. When Officer Gunnell arrived, he took the gun into evidence and arrested the defendant. Officer Gunnell testified the defendant's gun was a SCCY .9 millimeter handgun. The gun was entered into evidence along with pertinent photographs of Paul Huff Parkway and Derby Industries.

Both Mr. and Ms. Langford testified they were frightened during the incident. The defendant told Mr. Langford "at least two times that he was going to kill me." Though Mr. Langford testified that the defendant did not point the gun at him, he stated the defendant "was brandishing" the gun throughout the incident. Ms. Langford testified she saw "a gun in [the defendant's] waistband" but she did not see the defendant point the gun at her or Mr. Langford. Regardless, Ms. Langford stated she "was extremely fearful" that either she or Mr. Langford could have been shot. The State then rested its case, and the defendant testified on his own behalf.[1]

---

[1] The parties stipulated to a portion of body camera footage being entered into evidence. Though the defendant presented the footage during trial, he failed to enter it into evidence.

- 2 -

The defendant stated that he has "always" been responsible and safe in handling firearms. He also testified about his employment history, noting that he currently served the community through a gutter cleaning service but that he previously worked as a dispatcher for the Chattanooga Police Department ("CPD").

The defendant's testimony regarding the incident with Ms. Langford centered around his belief that she cut him off, was potentially intoxicated, and he needed to ensure she did not injure other motorists. As a result, the defendant followed Ms. Langford and began yelling at her to pull over. The defendant admitted to using profanity.

After parking outside of the gate at Derby Industries, the defendant got off of his motorcycle and asked Mr. Langford, "Hey, what's wrong with this lady." Mr. Langford shoved the defendant, and the defendant responded by putting his hands up and stating, "Look, I'm not here to fight, don't put your hands on me." Mr. Langford then pushed the defendant again, causing him to fall to the ground. The defendant went to his motorcycle and pulled his gun from the saddlebag. He placed the gun in his waistband, noting "it always had a bullet in the chamber." The defendant claimed Mr. Langford continued to engage him, stating "I'm gonna (sic) beat your a**, I'm gonna (sic) beat your a**." Mr. Langford "kept telling [the defendant] to put the gun down" so the two could fight. In response, the defendant told Mr. Langford, "go ahead, but you're gonna (sic) have to take a bullet."

The defendant denied chest bumping Mr. Langford and explained he retrieved his gun after Mr. Langford threatened him. The defendant told Mr. Langford that he was disabled and removed his shirt in order to show his scars, not to fight. After placing the gun in his waistband, the defendant stated Mr. Langford did not push or touch him again. He told Mr. Langford, "If you do get physical past this point, you will be shot," but the defendant stated this was not meant as a threat. The defendant denied pointing, brandishing, or waving the gun at Mr. Langford and stated he did not leave the situation because "I didn't do anything wrong. I was the one that had been wronged."

During cross-examination, the State questioned the defendant about why he was terminated from his dispatch position with the CPD. Despite numerous objections, which are detailed later in this opinion, the defendant ultimately admitted to being terminated from the CPD for "insubordination." Though the defendant acknowledged the insubordination was for lying during an internal investigation regarding allegations of a road rage incident and sexual harassment, the defendant maintained that he did not lie during the investigation. During redirect examination, the defendant acknowledged "there was an administrative finding" regarding his termination with the CPD but again denied that he lied during the investigation.

After deliberations, the jury found the defendant guilty of the simple assault of Ms. Langford (count 1) and the aggravated assault of Mr. Langford (count 2). At the subsequent sentencing hearing, the State entered into evidence the presentence report and Mr. and Ms. Langford's victim impact statements and presented testimony from CPD Officer Jason Irvin and Assistant District Attorney ("ADA") Paul Moyle.

Officer Irvin testified that he conducted an internal investigation of "a road rage incident" involving the defendant while he worked as a dispatcher for the CPD. The investigation revealed the defendant was not truthful about the incident and his employment was terminated.[2] ADA Moyle testified he first met the defendant when handling the defendant's case in general sessions court. In November 2019, the defendant mailed ADA Moyle's wife a letter wherein the defendant claimed ADA Moyle had "maliciously filed charges against [him]," noted details about ADA Moyle's career history and previous residences, attached two copies of the defendant's handgun carry permit, and stated "I will not stand by and allow [ADA Moyle] to do this to me and I will defend myself." ADA Moyle stated both he and his wife felt threatened by the letter, a copy of which was entered into evidence. The defendant did not offer any proof.

The trial court subsequently sentenced the defendant to the TDOC to serve three years for the aggravated assault conviction and eleven months and twenty-nine days for the simple assault conviction, suspended to supervised probation, with the terms to be served concurrently. The defendant filed a motion for a new trial which was denied by the trial court. This timely appeal followed.

### *Analysis*

I.   *Cross-Examination of The Defendant*

The defendant argues the trial court erred by allowing the State to cross-examine him regarding his termination from the CPD, asserting the State elicited inadmissible evidence "regarding an alleged prior act of brandishing a firearm during a road rage incident." The defendant suggests the evidence was hearsay and also inadmissible pursuant to Rules 403 and 404(b) of the Tennessee Rules of Evidence. The State argues the defendant "tied his credibility to his work history and responsible gun ownership during direct examination," and, as a result, "opened the door for the State to question him about the circumstances of his dismissal from the police department, which included an allegation

---

[2] The State introduced documents from the Tennessee Department of Labor & Workforce Development affirming the denial of unemployment benefits for the defendant after he was fired from the CPD. The trial court admitted the documents into evidence but noted it would not consider "the double layer of hearsay[] which is included in a large portion of the substance" of the documents.

- 4 -

of irresponsible gun ownership." Upon our review, we conclude the evidence was admissible after the defendant opened the door to the same during direct examination.

In Tennessee, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Tenn. R. Evid. 611(b). "Generally speaking, a denial of the right to an effective cross-examination is 'constitutional error of the first magnitude and amounts to a violation of the basic right to a fair trial.'" *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (quoting *State v. Hill*, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980)). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the discretion of the trial court." *Id.* (citing *Coffee v. State*, 216 S.W.2d 702, 703 (1948); *Davis v. State*, 212 S.W.2d 374, 375 (1948)). "Appellate courts may not disturb limits on cross-examination except when there has been an unreasonable restriction on the right." *Id.* (citing *State v. Fowler*, 373 S.W.2d 460, 466 (1963); *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984)).

"To attack the credibility of a witness, a party may question the witness concerning any matter that has been fairly raised by the evidence." *State v. Gomez*, 367 S.W.3d 237, 248 (Tenn. 2012). "A party may not introduce a subject that is inadmissible to attack the credibility of a witness." *Id.* (citing *State v. West*, 844 S.W.2d 144, 149 (Tenn. 1992)). However, "[e]ven if evidence is inadmissible, a party may 'open the door' to admission of that evidence." *Id.* at 246. "A party opens the door to evidence when that party 'introduces evidence or takes some action that makes admissible evidence that would have previously been inadmissible.'" *Id.* (quoting 21 Charles Alan Wright et al., *Federal Practice & Procedure Evidence* § 5039 (2d ed. 1987)). "The most common manner by which a party opens the door to inadmissible evidence is by raising the subject of that evidence at trial." *Id.* "When a party raises a subject at trial, the party 'expand[s] the realm of relevance,' and the opposing party may be permitted to present evidence on that subject." *Id.* (quoting 21 Charles Alan Wright et al., *Federal Practice & Procedure Evidence* § 5039.1; *see also Clark v. State*, 629 A.2d 1239, 1242 (1993) ("The 'opening the door' doctrine is really a rule of expanded relevancy. . . .")).

"[O]pening the door is a doctrine intended to serve fairness and truth-seeking." *State v. Vance*, 596 S.W.3d 229, 250 (Tenn. 2020) (citation omitted). "Accordingly, . . . the remedy sought after a party has opened the door should be both relevant and proportional." *Id.* at 250-51. "The otherwise inadmissible evidence sought to be introduced by the opposing party should be limited to that necessary to correct a misleading advantage created by the evidence that opened the door." *Id.* at 251 (citation omitted). "The trial court is in the best position to gauge the prejudicial impact of particular testimony." *Id.* (quoting *State v. Gaudet*, 97 A.3d 640, 646 (2014)).

Rulings regarding the relevancy of evidence are "within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion." *State v. Biggs*, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (*citing State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence that is not relevant to prove some part of the prosecution's case should not be admitted solely to inflame the jury and prejudice the defendant." *State v. Jordan*, 325 S.W.3d 1, 85 (Tenn. 2010). Further, "evidence which is unfairly prejudicial is that which has an undue tendency to suggest a decision on an improper basis, frequently, though not necessarily, an emotional one." *State v. March*, 395 S.W.3d 738, 774 (Tenn. Crim. App. 2011) (citing *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978)).

Here, the record makes clear that during direct examination, the defendant testified that he "currently serves the community." Additionally, the defendant testified about his service to the CPD "as a 911 dispatcher, call taker, and I did NCIC, as far as entering missing children, runaways, you know people, things of that nature." The defendant also stated that he has always been a responsible and safe gun owner. As such, during cross-examination, the State sought to elicit testimony from the defendant as to why he left the CPD. When the defendant claimed he left on his own because he "didn't agree with the political nature of the job. And while [he] loved what [he] did, [he] didn't love the people [he] worked for," the State challenged the defendant's answer and asked if he was not dismissed from the job for lying during two separate administrative hearings. The defendant objected to this line of questioning. The trial court overruled the objections, noting the defendant had opened the door to this subject matter during direct and the questions were relevant to the defendant's credibility. The defendant admitted he was fired from the CPD after the internal investigation but denied lying during the investigation.

Upon our review of the record, we conclude the trial court did not err in allowing the State to question the defendant about why he was terminated from the CPD because it related to the defendant's credibility. The defendant testified during direct about his service to the CPD and stated he had "always" been responsible when handling guns. After making these statements, the State attempted to attack the defendant's credibility during cross-examination by inquiring about the circumstances surrounding the defendant's termination from the CPD for lying during an administrative proceeding about a prior road rage incident involving the brandishing of a gun. Additionally, the State attempted to question the defendant about lying during an administrative hearing concerning an allegation of sexual harassment. As a result, the record indicates the trial court properly determined the State could question the defendant about his credibility as it related to his termination from the CPD and his gun use as it had been fairly raised during direct examination. *Gomez*, 367 S.W.3d at 248. Because the defendant's termination from the

CPD involved allegations that he lied during his employment, the defendant's responses to questions regarding the allegations were relevant to establish his credibility before the jury. The trial court properly allowed the questions in order for the State to correct the misleading advantage created by the defendant's direct testimony regarding his employment history and past behavior with firearms. *Vance*, 596 S.W.3d at 251.

Accordingly, the record indicates the trial court properly determined that evidence of the defendant's termination from the CPD and the prior road rage incident during which the defendant brandished a gun was relevant to the State's ability to challenge the defendant's credibility during cross-examination. Tenn. R. Evid. 401. The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse of discretion. *See DuBose*, 953 S.W.2d at 652. Nothing in the record indicates the trial court abused its discretion, and the defendant is not entitled to relief.

## II.    *Closing Argument*

The defendant argues the State committed prosecutorial misconduct during closing arguments "by claiming that **all** witness[es] testified that Mr. Langford was afraid when that simply was not true." The State contends that this Court must review this issue under the doctrine of plain error because "[n]o objection followed this portion of argument." Upon our review of the record, however, we determine the defendant has waived review of this issue and is not entitled to plain error relief. We will discuss each below.

As noted by the State, the record indicates the defendant failed to object to the complained-of statements during trial. Thus, the issue is waived pursuant to Rule 36 of the Tennessee Rules of Appellate Procedure, which provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36.

The defendant has also waived this issue for failing to specifically identify the alleged prosecutorial misconduct in his motion for a new trial. In the motion, the defendant alleged "several acts of prosecutorial misconduct," asserted the State made "numerous comments as to alleged actions of the [d]efendant to which no evidence of the same was presented during trial," and claimed "statements as to the [d]efendant's past were made." However, the defendant failed to specifically cite to the record or detail the allegations further. As a result, the issue is waived. Tenn. R. App. P. 3 ("Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a

new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.).

Finally, the issue is waived because the defendant failed to include the transcript of the hearing on the motion for a new trial in the record on appeal. If this Court is unable to fully review an issue based on the defendant's failure to include a full transcript, the issue has been waived. *See State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998) (failure to include trial transcript on appeal resulted in waiver of sentence challenge). Because the petitioner failed to provide a complete record on appeal, he has waived his claims of prosecutorial misconduct.

Regardless, as noted by the State, the defendant's argument also fails under plain error review. Under the plain error doctrine, a defendant may obtain relief only if all of the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010).

The defendant argues the State mischaracterized the evidence presented during trial by suggesting during closing argument that all of the State's witnesses testified that Mr. Langford was scared. The record, however, disagrees. In its final closing, the State made the following remark: "How many witnesses said that [Mr.] Langford was afraid? And maybe they didn't use those words. Every witness. They said it either because of what he said or because he did, what he did, or more importantly, because of what he didn't do." The State did not make any additional comments regarding the witnesses' testimony about whether Mr. Langford was fearful during his interaction with the defendant. Thus, our review of the record indicates the State's closing argument was simply a presentation of its theory of the case during which it identified "the strengths and weaknesses in the evidence to the jury." *State v. Hawkins*, 519 S.W.3d 1, 47 (Tenn. 2017) (citations and quotations omitted). Again, the trial court instructed the jury that the arguments of counsel were not evidence, and we presume the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001)). In addition, the proof at trial overwhelmingly established that Mr. Langford was scared during his interactions with the defendant. As such, the defendant cannot show that a clear and unequivocal rule of law was breached, or that consideration of the issue is necessary to do substantial justice, and he is not entitled to relief. *Martin*, 505 S.W.3d at 504; *Hester*, 324 S.W.3d at 56.

The defendant also argues the State's made an improper statement in response to his objections during his cross-examination. After the defendant objected to questioning about the prior road rage incident and asserted he did not have an "opportunity to cross-examine on any of this information," the State responded, stating: "Just so the record's clear, [defense counsel] has half the Chattanooga Police Department under subpoena today, for this very purpose." The defendant asserts this amounted to prosecutorial misconduct. We disagree.

Initially, we note, the defendant failed to specifically raise this issue in his motion for a new trial; therefore, it is waived. Tenn. R. App. P. 3 ("Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").

Regardless, the defendant cannot meet the burden required of him in order to obtain plain error relief on this issue. As noted above, a defendant may obtain plain error relief only if all of the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *Martin*, 505 S.W.3d at 504; *Hester*, 324 S.W.3d at 56. As it relates to the complained-of statement, the record fails to demonstrate that a substantial right of the defendant was adversely affected. Rather, the record indicates the State was responding to statements of defense counsel concerning his preparation in regards to evidence that would potentially arise during trial. The record also indicates the trial court instructed the jury that the arguments of counsel were not evidence, and this Court presumes the jury followed the trial court's instructions. *Joshua R. Starner*, 2016 WL 1620778, at *21; *Shaw*, 37 S.W.3d at 904. Thus, not only has the defendant waived this claim for failing to raise it in his motion for a new trial, but also he has failed to demonstrate he is entitled to relief under the doctrine of plain error. This issue is without merit.

## III. Sentencing

The defendant asserts the trial court erred in sentencing by improperly "weighing the mitigating and enhancing factors" and in finding his crime "was sufficiently horrifying as to overcome the presumption of alternative sentencing." The State submits the trial court properly exercised its discretion in sentencing the defendant. After our review, we agree with the State and affirm the judgments of the trial court.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See id.* §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness for within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

*A. Enhancement Factor*

- 10 -

Here, the record indicates the trial court sentenced the defendant to three years' incarceration as a Range I offender for the Class C felony of aggravated assault.[3] As a Range I offender, the defendant faced a sentencing range between three and six years. Tenn. Code Ann. §§ 39-13-102; 40-35-112(a)(3). Therefore, the three-year sentence imposed by the trial court falls within the applicable sentencing range for the defendant's offense and is presumed reasonable by this Court. *Bise*, 380 S.W. 3d at 707; *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The defendant argues the trial court improperly applied enhancement factor (1) – the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range – by relying on inadmissible evidence from Officer Irwin regarding a prior road rage incident. Tenn. Code Ann. 40-35-114(1). In assessing the applicable enhancement and mitigating factors, the trial court stated, in part:

> I do not believe that he was overly cooperative to justify the application of a mitigating factor. The only mitigating factor I find is mitigating factor (13). He has no prior record, he does have a work history, and he does have people in the community as contained in exhibit one, the PSI, who support him and vouch for him as a good man, all of which combined plays into mitigating factor (13).

> I am gonna (sic) find enhancement factor (1), that he has a prior history of criminal behavior. I'm gonna (sic) find by a preponderance of the evidence accredit the testimony of Assistant Chief Irvin from the City of Chattanooga, who measured his investigation by a preponderance of the evidence, I might add, that in a road situation, defendant admitted to turning on a dome light and once again displaying a firearm. I always thought that firearm safety demanded you never display a firearm unless you intend to use it. We don't just go around waving guns, and it is very concerning to this [c]ourt that that prior criminal behavior by a preponderance of the evidence is very similar and akin to the convictions at bar.

> I don't find that the offense involved more than one victim. He's convicted of two separate offenses, so the fact that there were two, he's got two separate convictions, one for simple assault and one for aggravated

---

[3] The defendant only challenges his sentence for aggravated assault on appeal. Accordingly, we limit our review to the sentence imposed for that conviction.

assault.  So the only enhancement factor I find is number (1).  The only mitigating factor I find is number (13).

. . . .

In balancing out the mitigation and the enhancement, while I find that the enhancement is significant because it's a similar crime, I do think it's significant that [the defendant] has no prior record at 36 years of age; that he always has been employed.  I think it's a wash.  The two factors balance together, equal that it should be a three-year term in count one, and should be an 11/29 term in count two.

I also want to give voice to the fact that 40-35-102 says the minimum sentence within the range of punishment is the sentence that should be imposed, because the General Assembly set the minimum length of sentence for each felony class to reflect the relativeness, relative seriousness of each offense.  So it is not binding, but when you have these two factors, which in this [c]ourt's opinion equal out, I do believe the minimum sentence is appropriate.

As evidenced above, in sentencing the defendant, the trial court properly weighed the applicable enhancement and mitigating factors and determined the two balanced each other out before imposing the minimum sentence within the applicable range.  The record indicates the defendant did not have a history of criminal convictions but "admitted to turning on a dome light and once again displaying a firearm" during the prior road rage incident.  In addition, the trial court accredited the testimony of Officer Irwin who investigated the road rage incident and determined the defendant participated in and lied about the same.  The defendant's action of displaying a firearm during a road rage incident constitutes criminal behavior regardless of whether it was prosecuted.

Thus, the record indicates the trial court imposed a within-range sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of mitigating and enhancement factors.  Tenn. Code Ann. §§ 40-35-103(5), -114, -210(b).  Nothing in the record indicates the trial court abused its discretion in weighing the applicable enhancement and mitigating factors.  *Bise*, 380 S.W.3d at 707.  And, our supreme court has made clear "mere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal."  *Id.* at 706.  The defendant is not entitled to relief.

### B.  Alternative Sentencing

The defendant also argues the trial court erred in finding his crime "was sufficiently horrifying as to overcome the presumption of alternative sentencing." The State contends the trial court properly denied alternative sentencing after making the appropriate findings, and we agree.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness for within-range sentences reflecting a decision based upon the principles and purposes of sentencing. *Caudle*, 388 S.W.3d at 278-79. Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a) (2014). The burden of establishing suitability for an alternative sentence rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A trial court is permitted to sentence a defendant to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2018); *see State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

"If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *Trotter*, 201 S.W.3d at 654 (quotations

omitted). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), -103(4). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Again, we review a trial court's sentencing determinations, including a denial of probation or another alternative sentence, under an abuse of discretion standard, and grant a presumption of reasonableness to within-range sentences reflecting an appropriate application of the purposes and principles of the Sentencing Act. *Caudle*, 388 S.W.3d at 278-79.

In denying alternative sentencing, the trial court acknowledged the defendant was eligible for probation under Tennessee Code Annotated section 40-35-303 because his sentence was for less than ten years. However, the trial court determined probation was not appropriate pursuant to Tennessee Code Annotated section 40-35-103(1)(B). The trial court explained:

> When I look at whether confinement is necessary, I do not find that confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct. That's just not applicable. He has the one prior similar, brandishing a gun on the roadways.

> I also agree that subpart (c) does not apply as the defendant has not been afforded any alternatives to incarceration in the past.

> However, subpart (b) does apply, in the opinion of this [c]ourt, 40-35-103 subpart (b). "Confinement is necessary to avoid depreciating the seriousness of the offense." I'm gonna (sic) quote *State v. Travis*, Tennessee Supreme Court, 1981. "We must reiterate the fact that if probation is deemed denied because solely of the nature of the offense, it would have to be clear that the criminal act as committed would be described as especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and it would be clear, therefore, that the nature of the offense as committed outweighed all other factors delineated in our code which might be favorable to a grant of probation."

> As I have stated, this is horrifying. I think it's shocking, the idea that a man just tries to play vigilante and impose the rules of the road as he sees them. I think it's reprehensible that an individual believes he knows better than trained lawyers and sitting judges. I think it's offensive that he engages in actions that I would consider to be animalistic: removing shirts; following people numerous miles; transferring rage from one individual to someone he

- 14 -

doesn't even know; transferring anger and rage at one D.A. to that D.A.'s wife. I think his conduct indicates that we are dealing with a dangerous individual who believes that he alone knows what justice is, and he alone is going to enforce the laws appropriately. He is not an individual, in this [c]ourt's opinion, who is amenable to correction. He doesn't think he's done anything wrong. How can you cure a problem that you won't admit exists? Amenability to correction is saying, "Hey, I've done wrong, I recognize it, and I'm going to do things to change my behavior." The first stage in correcting a problem is admitting that the problem exists, and he refuses to do so, and is not truthful, is not reasonable. And I do think that an individual who's out there doing these things and trying to take matters in their own hands is a danger and a threat to society at large.

He threatens people with ethical conduct. He threatens people with retaliation. He threatens people with guns. He just tears at a social compact. . . .

. . . .

I find that it is so aggravated an offense in the transfer of rage, that three years on count one should be served in the Tennessee Department of Correction[] as a standard Range I offender, credit for time served.

. . . .

Having found that a prison sentence is warranted because of the circumstances of the offense, I don't know - I didn't see a TBI certification for eligibility for diversion, but I'll give voice to it. And the bottom line is, is that defendant's attitudes, behaviors, and lack of remorse play against application of diversion. And I'm also gonna (sic) find, just like the *Travis* case, if it warrants prison, it is also such to an aggravated degree that the circumstances of the offense outweighs anything else in favor of the defendant, including his lack of criminal history.

I do not think any deterrent effect is justified in this case.

So the *Parker* and *Electroplating* factors, there are some, lack of criminal history. He's a man who people vouch for so he's got a good social history. His physical condition plays in his favor, but the bottom line is his attitudes and his lack of remorse, his lack of any acceptance of responsibility for any of this, his lack of candor before the [c]ourt, and the exaggerated

nature of this case in transfer of rage to anyone who he comes across in life, justify the denial of diversion as well.

Three years prison on count one, 11/29 suspended on count two, concurrent. No fine is appropriate.

Upon our review, we agree with the reasoning of the trial court. The trial court found the defendant's actions were "horrifying" and he was not amenable to correction due to his lack of remorse. As noted throughout the record, the defendant assaulted both Mr. and Ms. Langford after briefly interacting with Ms. Langford on Paul Huff Parkway. The defendant followed Ms. Langford for miles, used profanity and threatening gestures while driving, engaged in a physical altercation with Mr. Langford during which he brandished a gun, threatened to shoot Mr. Langford, and refused to end the encounter until police arrived. The record also indicates that the defendant participated in a previous road rage incident where he also brandished a gun and that the defendant threatened ADA Moyle and his wife while this case was pending. In reaching its decision, the trial court also considered the defendant's credibility and determined the defendant lacked candor before the court. *See Souder*, 105 S.W.3d at 608 ("Candor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of" an alternative sentence.). A trial court's findings of fact and credibility determinations at sentencing are generally binding on this Court. *State v. Parker*, 932 S.W.2d 945, 956 (Tenn. Crim. App. 1996).

Thus, the record indicates the trial court carefully considered the defendant's amenability to correction, the circumstances of the offense, the defendant's criminal record, the defendant's social history, the defendant's physical and mental health, and the deterrence value to the defendant and others before imposing a sentence in confinement. *Trent*, 533 S.W.3d at 291. The trial court also made specific findings that the circumstances of the defendant's offense were horrifying and shocking. *Trotter*, 201 S.W.3d at 654. Accordingly, the record supports the trial court's determination that confinement was necessary to avoid depreciating the seriousness of the defendant's offense, and he is not entitled to relief.

### *Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed. However, because the judgment forms do not mirror the convictions as charged in the indictment, we remand for entry of corrected judgment forms to reflect the appropriate conviction in count 1, for simple assault, and count 2, for aggravated assault.

_____
J. ROSS DYER, JUDGE