IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 9, 2022

## CHRISTOPHER RUSSELL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marion County**
**No. 11053    Thomas W. Graham, Judge**

_____

### No. M2022-00096-CCA-R3-PC

_____

The Petitioner, Christopher Russell, appeals from the denial of his petition for post-conviction relief from his convictions for second degree murder and aggravated child abuse, for which he is serving an effective twenty-five-year sentence. On appeal, he contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel and cumulative error claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TOM GREENHOLTZ, JJ., joined.

M. Keith Davis, Dunlap, Tennessee, for the Appellant, Christopher Russell.

Herbert Slatery III, Attorney General and Reporter; Hannah-Katherine Lackey, Assistant Attorney General; Paige Clarkson, District Attorney General; Steven Strain and Julia Veal, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions relate to the homicide of his three-month-old son. The evidence at the trial showed that the victim died from physical abuse. *See State v. Christopher Russell*, No. M2017-01152-CCA-R3-CD, 2018 WL 3700922 (Tenn. Crim. App. Aug. 3, 2018), *perm. app. denied* (Tenn. Nov. 14, 2018).

After the convictions were final, the Petitioner filed a pro se post-conviction petition, in which he alleged that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, who filed amended petitions. As relevant to this appeal, the petitioner alleged trial counsel had been ineffective in the following respects:

1. Failing to investigate Jerry Layne, an inmate who was incarcerated with the Petitioner and claimed the Petitioner had made incriminatory statements about the victim's death;

2. Failing to object when the State called Mr. Layne as a witness;

3. Failing to object to the victim's mother's testimony about the Petitioner's failure to participate in planning the victim's funeral, failure to attend the visitation, and tardiness for the funeral because the Petitioner was searching for an attorney;

4. Failing to object to the victim's mother's testimony about the Petitioner's prior behavior at a fast food restaurant drive-through;

5. Failing to object to the victim's mother's opinion testimony regarding the Petitioner's responsibility for the victim's death;

6. Stating during voir dire that the Petitioner would testify, despite the Petitioner's later not testifying; and

7. Performing deficiently on multiple occasions, the cumulative effect of which was to deprive the Petitioner of a fair trial.

At the post-conviction hearing, trial counsel testified that it was important during voir dire to educate prospective jurors about a defendant's presumption of innocence. He said that usually the prosecutor and judge did this but that it was important for him to do as a defense attorney. Counsel said a defense attorney did not know whether his client would testify "until the end of the trial." He said he told the prospective jurors that the judge would instruct them on the presumption of innocence and that he asked them if they thought the Petitioner had to prove his innocence. He acknowledged that he told the prospective jurors that the defense would present evidence and that the Petitioner would testify but said he did not make these assertions in his opening statement. He said he asked the prospective jurors what their verdict would be if the State did not prove its case beyond a reasonable doubt, which he thought gave him an "off ramp" to the Petitioner's testifying. Counsel said the Petitioner elected not to testify after they evaluated the evidence.

Trial counsel agreed that twelve days before the trial, the State notified him of its intent to call Jerry Layne, an inmate who was incarcerated with the Petitioner, as a witness. Counsel said the prosecutor provided an audio recording of Mr. Layne's statement. Counsel agreed that after he learned of the State's intent to call Mr. Layne at the trial, he filed a motion to continue, which the court denied. Counsel said he asked the prosecutor if

Larry Davis had been the investigator who spoke with Mr. Layne. Counsel said it had been important for him to know if Investigator Davis had been present when Mr. Layne was interviewed. Counsel said he sent his investigator to speak with Mr. Layne but that Mr. Layne would not talk to the investigator. Counsel agreed that Mr. Layne provided evidence of the Petitioner's admission that the Petitioner harmed the victim. Counsel thought Mr. Layne's demeanor on the witness stand and his prior convictions effectively undermined his credibility with the jury. Counsel said Mr. Layne was cross-examined about "a totally different statement" Mr. Layne made in a letter to a relative. Counsel said that the defense was aware of Mr. Layne's thirteen felony convictions and that Mr. Layne was cross-examined about his criminal record. Counsel acknowledged that he had not objected to Mr. Layne's being called as a witness and that no member of the defense team reviewed Mr. Layne's court files. Counsel said he had not been aware of documents in Mr. Layne's court files which stated that Mr. Layne had been hospitalized with a mental health issue and had been diagnosed with borderline personality disorder. The Petitioner offered as exhibits documents from Mr. Layne's court files showing an additional felony conviction and statements about the mental health issue and borderline personality disorder diagnosis.

The transcript of the trial proceedings was received as an exhibit.

The post-conviction court took the matter under advisement and later issued a written order denying relief. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I

## Issues Related to Mr. Layne's Testimony

The Petitioner contends that the post-conviction court erred in denying relief on his claims that trial counsel provided ineffective assistance in failing to (1) investigate Mr. Layne's background, (2) impeach Mr. Layne, and (3) object when the State called Mr. Layne as a witness. The State counters that the court did not err in denying relief because the Petitioner failed to prove his claims. We agree with the State.

To provide context for the issues involving Mr. Layne, we note that in adjudicating an issue regarding the denial of a continuance of the trial, this court observed the following in the Petitioner's appeal of the convictions:

> The Defendant asserts that the trial court erred in denying his motion to continue the trial filed on August 15, 2016, the morning of trial, due to the State's late disclosure of Mr. Layne as a witness. During a hearing on the motion, the prosecutor stated that Mr. Layne had written a letter to the District Attorney General claiming that he had knowledge about the Defendant's case. The prosecutor, who apparently had some involvement in the case initially, stated that he returned to the case toward the end of July and learned that no one had spoken to Mr. Layne. Officers interviewed Mr.

-4-

Layne on July 29. Defense counsel stated that the State provided him with Mr. Layne's tape recorded interview with law enforcement on August 3 but that due to the formatting of the recording, he was unable to listen to it until August 5. Defense counsel acknowledged that he was unable to interview Mr. Layne because Mr. Layne was represented by counsel. Rather, defense counsel maintained that he needed to interview those people to whom Mr. Layne claimed he relayed the Defendant's statements. The prosecutor stated that the State had not interviewed any of those witnesses to verify Mr. Layne's claims and that he did not oppose the Defendant's motion to continue.

The trial court denied the Defendant's motion, noting that the people with whom Mr. Layne maintained he spoke were all jail personnel and were available to interview. The trial court asked the State to assist in locating the witnesses and stated that it would recess court at a reasonable time for the first few days of trial to allow the defense an opportunity to interview the witnesses. The trial court also noted the difficulty in resetting the trial as a basis for denying the Defendant's request for a continuance. During the trial, the parties located two law enforcement officers to whom Mr. Layne maintained that he spoke following his conversation with the Defendant. The Defendant, however, did not call either of them as witnesses at trial.

In the Defendant's motion for new trial, he stated that following the trial, the defense investigator interviewed Mr. Jamichael Shepherd, who had been an inmate with Mr. Layne at the Marion County Jail. Mr. Shepherd stated in his affidavit attached to the Defendant's motion that on the day that Mr. Layne testified at trial, Mr. Layne told him that the State and Mr. Layne's attorney approached him about testifying against the Defendant. Mr. Layne told Mr. Shepherd that the prosecution believed that the Defendant had confessed the homicide to Mr. Layne's mother, who subsequently died. According to Mr. Shepherd, Mr. Layne said that the State wanted Mr. Layne to testify as if the Defendant had confessed to him even though the Defendant never made any admission to him. Mr. Shepherd also stated that Mr. Layne admitted he "had been made promises that included his sentence and monetary compensation." Mr. Shepherd acknowledged that he did not tell anyone about his conversation with Mr. Layne until after the Defendant's trial.

Mr. Shepherd also testified during the hearing on the Defendant's motion for new trial. While Mr. Shepherd's testimony was scattered and difficult to decipher, he essentially testified that while he and Mr. Layne were housed in the same pod at the local county jail, Mr. Layne informed him that

he did not have any knowledge about the Defendant's case. Mr. Shepherd stated that Mr. Layne told him that the Defendant had confessed to Mr. Layne's mother and that "some people" visited Mr. Layne at the jail and asked him to testify against the Defendant. Mr. Shepherd testified that Mr. Layne said he was receiving a "time cut" as a result. Mr. Shepherd said that after he "flipped out" in the pod, he was transferred to the pod where the Defendant was housed and informed the Defendant of his conversation with Mr. Layne. On cross-examination, Mr. Shepherd acknowledged that when he was transferred to a holding cell with the Defendant, Mr. Shepherd was upset with the way that he had been treated while at the jail. In denying the Defendant's motion for new trial, the trial court found Mr. Shepherd's testimony to be "highly questionable at best."

In denying relief on the claims related to Mr. Layne's testimony, the post-conviction court found that trial counsel addressed the State's calling Mr. Layne as a late-identified witness by moving for a continuance, which the trial court denied and this court affirmed. The post-conviction court found, as well, that counsel was aware of Mr. Layne's thirteen felony convictions involving dishonesty and brought the jury's attention to Mr. Layne's criminal history. The court found, "Given the time available . . . , there was no deficiency of counsel."

Trial counsel testified that shortly before the trial, he received notice that the State intended to call Mr. Layne. Counsel received an audio recording of Mr. Layne's statement. Counsel filed a motion for a continuance, which the State did not oppose, although the trial court was not inclined to grant the motion. Although Mr. Layne would not speak to the defense investigators, the court directed the State to make its other witnesses, law enforcement officers with knowledge of Mr. Layne's statement, available to the defense. Counsel testified that co-counsel cross-examined Mr. Layne about his significant criminal history involving crimes of dishonesty and about an inconsistent statement Mr. Layne made in a letter to a relative. The Petitioner offered evidence at the post-conviction hearing about Mr. Layne's mental health issues, but counsel testified that he thought the cross-examination attacking Mr. Layne's credibility had been effective. The post-conviction court's finding reflects that it was not swayed to believe that counsel performed deficiently in failing to discover the mental health evidence in the short timeframe before the trial. To the extent that the Petitioner complains about the cross-examination of Mr. Layne, we note counsel's testimony that co-counsel, not he, cross-examined Mr. Layne. The Petitioner did not call co-counsel as a witness at the hearing. Counsel acknowledged that he did not object to the State's calling Mr. Layne as a trial witness. However, the Petitioner has not identified a basis upon which Mr. Layne's testimony was inadmissible, aside from the late disclosure of the witness, which counsel addressed through a motion to continue.

The evidence does not preponderate against the post-conviction court's finding that trial counsel did not perform deficiently. Although the court did not specifically address prejudice, the failure to prove deficient performance was fatal to the Petitioner's ineffective assistance of counsel claim. *See Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370. The Petitioner is not entitled to relief on the claims related to Mr. Layne.

## II

### Issues Related to the Victim's Mother's Testimony

The Petitioner contends that trial counsel provided ineffective assistance in failing to object to the victim's mother's testimony about (1) the Petitioner's failure to participate in planning the victim's funeral, failure to attend the visitation, and tardiness for the funeral because the Petitioner was searching for an attorney; (2) the Petitioner's prior behavior at a fast food restaurant drive-through; and (3) her opinion regarding the Petitioner's responsibility for the victim's death. The State responds that because the Petitioner failed to show that a successful objection to these evidentiary matters would have led to a more favorable result, the post-conviction court did not err in denying relief. We conclude that the court did not err in denying relief.

The Petitioner did not question trial counsel about his lack of objections to the victim's mother's testimony. The only evidence presented at the post-conviction hearing consisted of the trial transcript, which was received as an exhibit.

The trial transcript reflects the victim's mother's testimony that she went with her family members to plan the victim's funeral and that the Petitioner did not accompany them because "[h]e was off finding an attorney." She said the Petitioner was one hour late for the funeral services and that he missed the family visitation. She also testified about an incident when she, the Petitioner, and the victim were in a car after purchasing food at a fast food drive-through. She said that she was seated in the back seat because she had been sitting with the victim before she ate and that the Petitioner had the victim in the front seat while she ate. She said that the victim was fussy and that the Petitioner was feeding the victim. She heard a "thump" and asked the Defendant what had happened. She said the Petitioner said the victim "kind of went back" and hit his head on the steering wheel. She said that she asked to see the victim but that the Petitioner would not allow her to see him. The transcript also reflects that on cross-examination, co-counsel asked the victim's mother about her having remained in a relationship with the Petitioner for eight months after the victim's death. The victim's mother said she believed at the time that the Petitioner had not killed the victim. On redirect examination, the prosecutor asked the victim's mother if, after thinking about the events that transpired in the victim's lifetime and the autopsy results, she believed the Petitioner had killed the victim, to which the victim's mother said, "Looking back and thinking, yes."

The post-conviction court found that trial counsel had been deficient in not objecting to the testimony about the funeral and the incident at the fast food restaurant but that the Petitioner had not shown prejudice by establishing a reasonable probability of a different result if the objections had been made. The court found that counsel made a strategic decision not to object to the victim's mother's opinion testimony about the Petitioner's causing the victim's death and that the Petitioner had not shown prejudice by establishing a reasonable probability of a different result if the objection had been made.

As we have stated, the Petitioner did not ask trial counsel at the post-conviction hearing about his lack of objections in order to ascertain if counsel made a strategic decision not to object. Although the post-conviction court found that counsel performed deficiently in not objecting to the victim's mother's testimony about the funeral arrangements and the fast food restaurant incident, the evidence preponderates against the court's findings, given the absence of proof that the lack of objection to this evidence was not a strategic decision. *See, e.g.*, *State v. Leroy Sexton*, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *5 (Tenn. Crim. App. Jan. 12, 2007) (in ineffective assistance of counsel claim raised in the conviction proceedings, holding that the defendant failed to prove deficient performance because he did not question trial counsel at the motion for a new trial hearing about whether questions he asked the victim on cross-examination were part of his trial strategy or whether the testimony was mistakenly elicited).

As to the State's questioning of the victim's mother about her opinion about whether the Petitioner caused the victim's injury, this occurred on redirect after co-counsel opened the door to this line of inquiry on cross-examination of the victim's mother about why she remained in a relationship with the Petitioner after the victim's death. The Petitioner argues that this evidence was inadmissible lay opinion testimony that was objectionable pursuant to Tennessee Rule of Evidence 701(a). However, a party may "open the door" to otherwise inadmissible evidence by introducing evidence or taking action which causes the previously inadmissible evidence to become admissible. *See, e.g.*, *State v. Gomez*, 367 S.W.3d 237, 246 (Tenn. 2012). Likewise, "a party may open the door to otherwise inadmissible evidence by eliciting *admissible* evidence, in contrast to the doctrine of curative admissibility." *State v. Vance*, 596 S.W.3d 229, 250 (Tenn. 2020) (emphasis in original) (citing 21 Fed. Prac. & Proc. Evid. § 5039.1). The post-conviction court found that counsel did not object to this testimony as a matter of strategy. The trial record reflects that co-counsel initiated the inquiry which led to the victim's mother's testifying about her opinion about the Petitioner's culpability for the victim's death. The fact that the defense initiated this line of inquiry supports the court's conclusion that counsel did not object as a matter of defense strategy.

We turn to the question of prejudice related to the failure to object to the victim's mother's testimony. This court's opinion from the Petitioner's appeal of the convictions

-8-

reflects that the State presented two medical experts who said the victim's injuries resulted from child abuse, not from an accident or from congenital issues as the Petitioner theorized. *See Christopher Russell*, 2018 WL 3700922, at \*10-11. The victim's mother testified that the victim became ill after he had been in the Petitioner's exclusive care. *Id*. at \*1-3. Mr. Layne testified that the Petitioner told him that when the victim would not stop crying, the Petitioner shook the victim and threw the victim on a mattress. *Id.* at \*10-11. The Petitioner told a detective that he twice accidentally caused the victim to hit his head, one such occasion being the day before the victim's hospitalization for the injuries which caused his death. *Id.* In view of the strong proof the State presented at the trial, the evidence does not preponderate against the post-conviction court's finding that the Petitioner failed to show a reasonable likelihood of a more favorable result if counsel had objected to portions of the victim's mother's testimony.

Although the post-conviction court found that counsel performed deficiently in not objecting to two of the three challenged evidentiary matters, the record supports the court's finding that the Petitioner failed to establish prejudice, the latter of which is fatal to all three of his claims regarding the failure to object to portions of the victim's mother's testimony. *See Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370. The Petitioner is not entitled to relief on these claims.

## III

### Statement During Voir Dire that the Petitioner Would Testify

The Petitioner contends that the post-conviction court erred in denying relief on his claim that counsel was ineffective because he stated during voir dire that the Petitioner would testify, but the Petitioner ultimately did not testify. The State responds that because the record supports the court's findings that the Petitioner failed to establish deficient performance of counsel that the Petitioner was prejudiced, the court properly denied relief. We agree with the State.

The trial record reflects that during voir dire, trial counsel spoke about the Petitioner's presumption of innocence and the State's burden of proof to prove guilt. In this context, counsel stated

> I think [the trial court] will instruct you that the presumption of innocence actually stands as actual proof for the defendant until overcome by the State. So the question I'd like to ask, although we intend to offer evidence in this case, that [the Petitioner] is not guilty. We're going to put on proof that he's not guilty. [The Petitioner] is going to testify. Having said that, does anybody here think that he has to prove his innocence?

-9-

Counsel then asked individual prospective jurors if they thought the Petitioner had to prove his innocence. Counsel also asked some of the prospective jurors if they understood the State had the burden of proving its case beyond a reasonable doubt. Counsel then polled some of the prospective jurors about what their verdict would be if the State failed to prove its case.

The trial record reflects that the defense called an expert witness but that the Petitioner did not testify. During the hearing conducted pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), the Petitioner testified that he understood his right to choose whether or not to testify and that, after consulting with trial counsel, he had elected not to testify in his own defense.

In denying relief on this issue, the post-conviction court found, "The ultimate decision as to whether or not the Petitioner would testify was a strategy decision for the Petitioner. Likewise, a discussion by counsel as to the likelihood that Petitioner would take the stand was a strategy decision of counsel."

Trial counsel testified that an important function of voir dire was to educate the prospective jurors about the presumption of innocence. He agreed that he told the prospective jurors that the defense would present evidence and that the Petitioner would testify. The Petitioner argues repeatedly that counsel "promised" the Petitioner would testify, but the transcript does not reflect a "promise." Counsel said he asked the prospective jurors what their verdict would be if the State had not proven its case beyond a reasonable doubt, which he thought gave him an "off ramp" to the Petitioner's testifying. Counsel said he did not tell the jury in his opening statement that the Petitioner would testify. Counsel testified at the hearing that a defense attorney did not know whether his client would testify "until the end of the trial" and that the Petitioner elected not to testify after counsel and the Petitioner evaluated the evidence.

Citing *State v. Zimmerman*, 823 S.W.2d 220, 225 (Tenn. Crim. App. 1991), the Petitioner argues that overstatement or misstatement by defense counsel may have adverse effects and that counsel who fails to deliver forecasted evidence impairs counsel's credibility. Certainly, this is true. In the present case, the post-conviction court found that trial counsel's statements during voir dire were matters of strategy, as was the Petitioner's ultimate decision not to testify after consulting with counsel. Counsel initially stated during voir dire but not during opening argument that the Petitioner would present evidence and would testify. Counsel educated the jury during voir dire on the burden of proof and the presumption of innocence. The defense presented evidence as counsel had stated during voir dire that it would, although the evidence ultimately did not include the Petitioner's testimony.

Because the Petitioner's argument relies, at length, upon *Zimmerman*, we take this opportunity to distinguish it from the present case. In *Zimmerman*, defense counsel knew the defendant's testimony was important, and the established defense strategy was to confront the State's evidence about the crime with the defendant's testimony. *Id.* at 228. Counsel said in the opening statement that the defendant was going to testify. *Id.* at 225. Nevertheless, counsel abandoned the established strategy without any apparent basis for the decision and recommended to the defendant that she not testify, while the co-counsel recommended that she follow the established strategy and take the stand in her own defense. *Id.* at 222, 226. As a result of counsel's departure from the established strategy, co-counsel declined to participate in closing arguments because he felt he "couldn't face the jury." *Id.* at 226. Counsel also failed to call other defense witnesses, whose testimony was later received at the motion for a new trial. *Id.* at 226-27. With this background, the *Zimmerman* court considered whether the cumulative effect of counsel's opening statement, failure to call certain defense witnesses, and failure to call the defendant, all of which were departures from the established strategy, cumulatively deprived the defendant of the effective assistance of counsel in the conviction proceedings. *See id.* at 228. In granting relief, this court said, "It may be that none of these three areas of deficient performance, standing alone, would have justified the grant of a new trial. Yet, we think that the cumulative effect of these errors deprived the defendant of a meaningful defense." *See id.* The *Zimmerman* case involved a wholesale, mid-trial abandonment of established strategy, with which co-counsel strongly disagreed.

In the present case, in contrast, trial counsel said in voir dire but not in his opening statement that the Petitioner would testify, while also educating the jury about the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt. No evidence shows an abrupt change of strategy regarding the Petitioner's testimony. Counsel testified that a defense attorney does not know whether his client will testify until near the end of the trial and that in the present case, he conferred with the Petitioner, who elected not to testify. *Zimmerman* is distinguishable upon its facts.

We have considered, as well, the Petitioner's argument that the post-conviction court erred in failing to conduct the *Zimmerman* analysis for evaluating whether trial counsel was ineffective in failing to call the Petitioner as a witness. *See id.* at 227. The Petitioner has not raised on appeal an issue regarding trial counsel's failure to call the Petitioner as a witness as a freestanding ineffective assistance of counsel issue. In any event, the court found that the decision to testify was ultimately the Petitioner's and that trial counsel's consultation with the Petitioner regarding the Petitioner's decision whether to testify was a matter of trial strategy. The Petitioner did not testify at the hearing. Without his testimony, the court was unable to evaluate whether counsel was ineffective in failing to call him as a witness. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to . . . present witnesses in support of his defense, these witnesses should be presented by the petitioner at the

-11-

evidentiary hearing."). Without the Petitioner's testimony, the court could not have conducted the *Zimmerman* analysis.

Trial counsel was operating in the dynamic setting of a trial, and although defense counsel in a criminal case is wise to avoid overstatements or misstatements to the jury, we conclude that the evidence does not preponderate against the post-conviction court's determination that counsel did not perform deficiently. Because the Petitioner failed to establish deficient performance, he cannot prevail on his claim. *See Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370. He is not entitled to relief on this basis.

## IV

## Cumulative Error

In his final issue, the Petitioner contends that the post-conviction court erred in denying his ineffective assistance of counsel claim that trial counsel performed deficiently on multiple occasions, the cumulative effect of which was to deprive the Petitioner of a fair trial. The State responds that the court properly denied cumulative error relief. We agree with the State.

The cumulative error doctrine requires relief when "multiple errors [are] committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76–77 (Tenn. 2010) (internal citations omitted); *see State v. Jordan*, 325 S.W.3d 1, 79 (Tenn. 2010) ("'[T]he combination of multiple errors may necessitate . . . reversal . . . even if individual errors do not require relief.'") (quoting *State v. Cribbs*, 967 S.W.2d 773, 789 (Tenn. 1998)).

"[W]hen an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Id.* The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Id.* Counsel's failure to conduct adequate pretrial preparation and investigation may establish prejudice pursuant to *Strickland*. *Id.*

The post-conviction court found that trial counsel performed deficiently in failing to object to the victim's mother's testimony about the Petitioner's participation in the

-12-

victim's funeral arrangements and about the events at the fast food restaurant. When considering these claims individually, the post-conviction court found that the Petitioner failed to show prejudice. When considering them collectively, the court found

> [T]he cumulative effect of these errors in light of the overwhelming proof against the Petitioner would *not* have caused to result to be any different.
>
> Finally, the Court, in light of the strength of the State's case, finds after a full review of all of the alleged errors of counsel in this case that the prejudice component simply does not rise to the level that would create a serious doubt as to the correctness of the jury's verdict or the overall fairness of the trial.

(Emphasis in original.)

The Petitioner has not shown that the evidence preponderates against the post-conviction's findings. He is not entitled to relief based upon a cumulative error theory.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE